[No. S099667. Apr. 22, 2004.]

RAUL V. AGUILAR, Plaintiff and Appellant, v.
ESTHER R. LERNER, Defendant and Respondent.

■■■■■■

■■■■■■■■■■■■■■

---

---

COUNSEL

Aguilar & Sebastinelli and Allen J. Kent for Plaintiff and Appellant.

Howard R. Melamed for Defendant and Respondent.

Conkle & Olesten, William C. Conkle and Eric S. Engel as Amici Curiae on behalf of Defendant and Respondent.

---

OPINION

**WERDEGAR, J.**—When plaintiff Raul V. Aguilar hired defendant Esther R. Lerner to represent him in a marital dissolution matter, he signed a written retainer agreement that included an agreement to arbitrate any dispute "concerning fees . . . or any other claim relating to [plaintiff's] legal matter which arises out of [plaintiff's] legal representation." Such an agreement normally would be enforceable under the California Arbitration Act (CAA). (Code Civ. Proc., § 1280 et seq.) A dispute arose, and plaintiff now contends this arbitration agreement is invalid, specifically as to defendant's claim for attorney fees and costs, and possibly in its entirety, because the agreement contravenes his rights pursuant to the mandatory fee arbitration act set forth in Business and Professions Code section 6200 et seq. (hereafter the MFAA). (All statutory references are to this code unless otherwise stated.) Were the arbitration agreement found to be invalid in its entirety, he claims, he would be entitled to avoid arbitration altogether and litigate in a jury trial both his malpractice claims and defendant's cross-claim for attorney fees and costs. The Court of Appeal found plaintiff was judicially estopped from raising these arguments; alternatively, defendant claims plaintiff waived them by filing a lawsuit against her for professional malpractice.

We conclude plaintiff is not judicially estopped from attempting to rely on the MFAA to invalidate his arbitration agreement, but that in filing a malpractice suit against defendant he waived all rights he might have asserted under the statutory scheme. In light of plaintiff's waiver, we have no occasion to address how we might reconcile a client's rights under the MFAA with a client's preexisting agreement with counsel to arbitrate under the CAA. Accordingly, we affirm the decision of the Court of Appeal.

## FACTS

Plaintiff Aguilar, himself an attorney, hired defendant Lerner, a family law specialist, to represent him in his marital dissolution. According to plaintiff's declaration, he explained to Lerner that he desired the matter to be resolved quickly, as he had endured what he believed was unnecessary expense and frustration with his previous attorney. Lerner agreed to represent him and produced a written retainer agreement for his signature. Aguilar declares he signed the agreement and initialed certain paragraphs, including the arbitration provision, without reading them. He declares that he "had no idea the retainer agreement contemplated the arbitration of legal malpractice claims and waiver of [his] right to a jury trial. No one explained to me that it did." He claims he did not negotiate any of the terms in the retainer agreement. The agreement is dated November 30, 1994.

Lerner declares that after she agreed to represent Aguilar, she gave him her retainer agreement "and asked him to carefully review it before signing [it]." She states it was her "custom and practice to encourage a potential client to carefully review the retainer agreement and ask any questions that they might have before signing. Further, I encourage them to take the retainer agreement with them before signing in order that they can take the time on their own to carefully review the terms of the agreement." She declares Aguilar did not sign the agreement in her presence but took it with him. He thereafter returned a signed and initialed copy to Lerner by both facsimile and first class mail.

The arbitration agreement is set forth as paragraph 7 in the retainer agreement. It provides: "In the event that there is any disagreement between the CLIENT and ATTORNEY concerning fees, this Agreement or any other claim relating to CLIENT'S legal matter which arises out of CLIENT'S legal representation, CLIENT hereby agrees to submit such dispute to binding arbitration under the rules of the San Francisco Bar Association and the Code of Civil Procedure of the State of California. The prevailing party shall be entitled to reasonable attorney's fees and costs incurred in enforcing any arbitration award or engaging in any court proceedings."

A dispute later arose, and Aguilar discharged Lerner. On March 17, 1997, he filed a complaint for damages in San Francisco Superior Court, alleging Lerner had committed professional negligence and a breach of her fiduciary duty to him. In response, Lerner petitioned to compel arbitration of these claims pursuant to Code of Civil Procedure section 1281;[1] she also added her

---

[1] Code of Civil Procedure section 1281 provides: "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract."

own claim for unpaid attorney fees and costs. The superior court granted the petition to compel, stating that the results of the arbitration would be binding, and that "[p]laintiff's claim for legal malpractice falls within the scope of [the] arbitration provision [he signed]."

Lerner prevailed in arbitration, the arbitrator granting her judgment against Aguilar on his complaint for damages. On Lerner's claim for unpaid legal fees and costs, the arbitrator awarded her $32,709.64. On Lerner's motion for reasonable attorney fees and costs associated with the arbitration hearing, the arbitrator ruled she was entitled to $7,138 in attorney fees pursuant to Code of Civil Procedure section 1033.5, subdivision (a)(10)(A), and $23,514.75 in costs pursuant to Code of Civil Procedure section 1032, subdivision (b).[2]

The superior court denied Aguilar's motion to vacate the arbitration award and granted Lerner's motion to confirm the award. Aguilar appealed; the Court of Appeal affirmed; we granted review.

## DISCUSSION

Aguilar contends the parties' agreement to arbitrate was invalid and unenforceable because it was contrary to the MFAA (§ 6200 et seq.), which makes arbitrating attorney fee disputes wholly voluntary for a client and gives a client who chooses to arbitrate the option of rejecting the arbitrator's decision and proceeding to trial. Moreover, he contends that although he filed a lawsuit against defendant for professional malpractice, he is entitled to rely on the procedural protections with respect to fee disputes the MFAA provides to consumers of legal services. (See § 6201, subd. (d).) Because plaintiff seeks to invalidate an arbitrator's award, we must determine, before addressing the merits of his claim, whether his case comes within an exception to the general rule of arbitral finality and limited appellate review.

### A. Judicial Review

When parties choose to forgo the traditional court system and arbitrate their claims, it is assumed they wish to have a final and conclusive resolution of their dispute. The Legislature has recognized this underlying assumption of finality and has, by statute, limited the grounds for judicial review of an arbitrator's award. (Code Civ. Proc, § 1286.2.) Consistent with this legislative intent, we recognized the general rule that "an arbitrator's decision cannot be reviewed for errors of fact or law." (*Moncharsh v. Heily &*

---

[2] Code of Civil Procedure section 1033.5, subdivision (a)(10)(A) permits a prevailing party to recover attorney fees as costs when authorized to do so by contract. Section 1032, subdivision (b) of the same code provides: "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding."

*Blase* (1992) 3 Cal.4th 1, 11 [10 Cal.Rptr.2d 183, 832 P.2d 899] (*Moncharsh*).) We explained that because the Legislature has provided certain statutory grounds to overturn or modify an arbitrator's decision, courts should not subject such decisions to standard judicial review. (*Id.* at pp. 26, 27–28.)

■ In addition, however, to the statutory grounds for vacating an arbitrator's award, we explained in *Moncharsh* "that there may be some limited and exceptional circumstances justifying judicial review of an arbitrator's decision . . . . Such cases would include those in which granting finality to an arbitrator's decision would be inconsistent with the protection of a party's *statutory rights.*" (*Id.* at p. 32, italics added.) It is this exception on which plaintiff relies in seeking judicial relief from the arbitrator's award.

We applied the statutory rights exception to the rule of arbitral finality in *Board of Education v. Round Valley Teachers Assn.* (1996) 13 Cal.4th 269 [52 Cal.Rptr.2d 115, 914 P.2d 193] (*Round Valley*). In that case, a school district notified a probationary teacher it would not renew his teaching contract for the next year. He sought arbitration as authorized pursuant to the applicable collective bargaining agreement, claiming the district had failed to provide him with notice of nonreelection as required in the agreement. The teacher prevailed in arbitration, and the district thereafter petitioned to vacate the arbitration award, claiming the notice required by the collective bargaining agreement was contrary to the requirements set forth in Education Code section 44929.21 and certain provisions of the Government Code.

On the question of judicial review of the arbitrator's decision, we explained: "Although we adhere to our holding in *Moncharsh* that arbitrator finality is the rule rather than the exception, we agree that—if District is correct concerning the scope of its statutory rights under the Education and Government Codes—this case presents the exceptional circumstance that allows for judicial review of the arbitrator's decision. Should District's interpretation of the law prevail, we would be faced with an 'explicit legislative expression of public policy' that issues involving the reelection of probationary teachers not be subject to arbitration. [Citation.] This expression of public policy would thus conflict with the expressed legislative intent to limit private arbitration awards to statutory grounds for judicial review. Thus, rigidly insisting on arbitral finality here would be 'inconsistent with the protection of a party's [i.e., District's] statutory rights.' " (*Round Valley*, *supra*, 13 Cal.4th at p. 277.)

■ Like the school district in *Round Valley*, plaintiff relies on statutory rights he claims will be infringed by limiting judicial review of the arbitrator's decision in this case. He contends the arbitrator exceeded his powers in resolving the parties' dispute because the agreement to arbitrate contravened both plaintiff's statutory rights as set forth in the MFAA and the public policy

underlying the statute. We agree that enforcement of an arbitration agreement that violates a plaintiff's rights under the MFAA would exceed the arbitrator's powers. Consequently, judicial review of the arbitrator's decision here is appropriate. We thus turn to the merits of plaintiff's claims.

### B. *The MFAA*

The parties in this case arbitrated their dispute pursuant to the CAA, set forth in part 3, title 9 of the Code of Civil Procedure, commencing with section 1280. The CAA "represents a comprehensive statutory scheme regulating private arbitration in this state. (§ 1280 et seq.) Through this detailed statutory scheme, the Legislature has expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' " (*Moncharsh, supra,* 3 Cal.4th at p. 9.) "The statutes set forth procedures for the enforcement of agreements to arbitrate ([Code Civ. Proc.,] §§ 1281.2–1281.95), establish rules for the conduct of arbitration proceedings except as the parties otherwise agree (*id.,* §§ 1282–1284.2), describe the circumstances in which arbitrators' awards may be judicially vacated, corrected, confirmed, and enforced (*id.,* §§ 1285–1288.8), and specify where, when, and how court proceedings relating to arbitration matters shall occur (*id.,* §§ 1290–1294.2)." (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 830 [88 Cal.Rptr.2d 366, 982 P.2d 229].) Defendant invoked this statutory scheme in response to plaintiff's malpractice lawsuit.

By contrast, the MFAA constitutes a separate and distinct arbitration scheme. The MFAA was first proposed by the Board of Governors of the State Bar of California in 1976 when, finding that disputes concerning legal fees were the most serious problem between members of the bar and the public, the board sought to create a mechanism for arbitrating disputes over legal fees and costs. Recognizing the "disparity in bargaining power in attorney fee matters which favors the attorney in dealings with infrequent consumers of legal services" (Hargarten & Ardisson, *Fine Tuning California's Mandatory Attorney Fee Arbitration Statute* (1982) 16 U.S.F. L.Rev. 411, 415), that many clients could not afford hiring additional counsel to litigate fee disputes in the civil courts (*ibid.*), and that previous schemes that called for voluntary arbitration were ineffective ( *id.* at pp. 413–414), the Legislature enacted the MFAA. The original legislation provided in pertinent part: "The Board of Governors [of the State Bar of California] shall, by rule, establish, maintain, and administer a system and procedure for the arbitration of disputes concerning fees charged for professional services by members of the State Bar or by members of the Bar of other jurisdictions." (Stats. 1978, ch. 719, § 1, p. 2249.) This mandate has been expanded to include mediation, but is otherwise unchanged today. (§ 6200, subd. (a).)

In contrast to the CAA, which is governed by the Code of Civil Procedure, the MFAA has its own rules and limitations, as set forth in the Business and Professions Code. As one appellate court has described it, the MFAA "is a closed system and the binding arbitration agreed to . . . is the arbitration conducted by [a] local bar association *under the MFAA*, not some other private alternative dispute resolution provided by another forum." (*Alternative Systems, Inc. v. Carey* (1998) 67 Cal.App.4th 1034, 1042–1043 [79 Cal.Rptr.2d 567].) The primary limitation of the MFAA is that it applies only to disputes concerning "[legal] fees, costs, or both" (§ 6200, subd. (a)) and is specifically inapplicable to "[c]laims for affirmative relief against the attorney for damages or otherwise based upon alleged malpractice or professional misconduct" (*id.*, subd. (b)(2)). By contrast, virtually any civil dispute, including claims of legal malpractice, can be the subject of arbitration under the CAA. (See Code Civ. Proc., § 1281 ["A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract"]; see, e.g., *Powers v. Dickson, Carlson & Campillo* (1997) 54 Cal.App.4th 1102 [63 Cal.Rptr.2d 261].) Although the parties here arbitrated their dispute pursuant to the CAA, the MFAA is potentially relevant because defendant, in her petition to compel arbitration, included a claim for unpaid legal fees and costs.

The nature of the obligation to arbitrate under the MFAA differs from that under standard arbitration in two important ways. First, the obligation to arbitrate under the MFAA is based on a statutory directive and not the parties' agreement. Thus, a client may invoke the MFAA and proceed to arbitration despite the absence of any prior agreement to do so. By contrast, standard arbitration requires that both parties to a dispute agree to arbitrate. (*Benasra v. Marciano* (2001) 92 Cal.App.4th 987, 990 [112 Cal.Rptr.2d 358] ["a party cannot be compelled to arbitrate a dispute that he has not agreed to resolve by arbitration"].)

Second, section 6200, subdivision (c) provides: "[A]rbitration under this article shall be voluntary for a client and shall be mandatory for an attorney if commenced by a client." In other words, whereas a client cannot be forced under the MFAA to arbitrate a dispute concerning legal fees, at the client's election an unwilling attorney can be forced to do so.

The finality of an arbitration award under the MFAA also generally differs from an award rendered pursuant to standard arbitration under the CAA. Although parties choosing to resolve their dispute in standard arbitration pursuant to the CAA "typically expect" that the arbitrator's decision will be final (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 373 [36 Cal.Rptr.2d 581, 885 P.2d 994]; *Moncharsh, supra,* 3 Cal.4th at

p. 10), an award rendered pursuant to an arbitration under the MFAA is nonbinding, and either party may seek a trial de novo (§ 6204, subd. (a)). The MFAA, however, also provides that the parties may agree in writing that the arbitrator's award will be binding. (*Ibid.*)

Finally, the MFAA specifies the conditions under which the client can waive its protections. "A client's right to request or maintain arbitration under the provisions of this article is waived by the client commencing an action or filing any pleading seeking either of the following: [¶] (1) Judicial resolution of a fee dispute to which this article applies. [¶] (2) Affirmative relief against the attorney for damages or otherwise based upon alleged malpractice or professional misconduct." (§ 6201, subd. (d).) The MFAA thus "provides the client with an *alternative* method of resolving a fee dispute with his attorney, *not one in addition* to traditional litigation." (*Juodakis v. Wolfrum* (1986) 177 Cal.App.3d 587, 593 [223 Cal.Rptr. 95].)

As indicated, the parties in this case arbitrated their dispute pursuant to the CAA, not the MFAA. When plaintiff filed his complaint in superior court against defendant for professional negligence and breach of fiduciary duty, defendant understandably petitioned to compel arbitration pursuant to the parties' agreement. Had the parties simply arbitrated the malpractice-related claims, no question regarding application of the MFAA would have arisen. But because defendant in her petition to compel arbitration added a claim for unpaid legal fees and costs, plaintiff asserts the MFAA applies. Although plaintiff has never sought to arbitrate the fee dispute in an MFAA arbitration, he seeks to invoke the act's client protections in order to invalidate the parties' agreement.

This case thus poses the question whether the parties' agreement to arbitrate is enforceable or is superseded by the MFAA.[3] The question is significant in light of the proliferation of arbitration clauses in attorney retainer agreements during the last two decades. This proliferation is understandable, for we have presided over a recent period of rapid expansion of arbitration as a dispute resolution mechanism. At the time the MFAA was enacted in 1978, arbitration under the CAA was still in its infancy. Though the CAA was enacted in 1961, it was not until the early 1980's that the use of arbitration as an alternative method to resolve legal disputes became prevalent and both this court and the United States Supreme Court began determining the outer limits of the procedure. For example, we held in 1983 that when a party to an arbitration agreement in a contract contended the contract was

---

[3] Compare the arbitration clause in this case to the agreement at issue in *Powers v. Dickson, Carlson & Campillo, supra,* 54 Cal.App.4th at pages 1106–1107, which specified that fee disputes would be arbitrated pursuant to the MFAA and all other disputes would be arbitrated pursuant to the "Commercial Rules of the American Arbitration Association."

induced by fraud, that claim was itself arbitrable. (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street* (1983) 35 Cal.3d 312 [197 Cal.Rptr. 581, 673 P.2d 251].) In 1992, we held an arbitrator's decision was generally unreviewable for legal error, thereby enhancing the finality of an arbitral decision. (*Moncharsh, supra,* 3 Cal.4th 1.) Meanwhile, in 1984, the high court began giving strong endorsements of arbitration under the Federal Arbitration Act. (*Southland Corp. v. Keating* (1984) 465 U.S. 1 [79 L.Ed.2d 1, 104 S.Ct. 852]; see *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1074–1075 [90 Cal.Rptr.2d 334, 988 P.2d 67] [discussing the FAA].) The many cases involving arbitration that have reached this court in the last 15 years testify to its increasing use as a dispute resolution method.

Preliminary to deciding the merits of plaintiff's claim, however, we must decide two questions: (1) Is plaintiff judicially estopped from relying on the statute's protections, as the appellate court held? (2) If not, did he waive the statute's protections by filing his suit for malpractice, as defendant contends?

### C. *Estoppel*

The Court of Appeal below found that, "[b]y never availing himself of his statutory right to arbitration under the [MFAA] scheme, and by filing a malpractice action, [plaintiff] expressly rejected the protections afforded by the [MFAA] scheme. In light of this conduct, he cannot now say the arbitrator's decision conflicted with the protection of statutory rights he never sought." Further: "[Plaintiff's] position on appeal that the arbitrator's award denied him the protection of his [MFAA] rights is incompatible with his position below that arbitration under the [MFAA] system was both inappropriate and, for him, unwanted. Given these contrasting positions, he is now *estopped* from urging that the arbitration award exceeded the arbitrator's powers because it conflicted [with] the protection of the [MFAA]." (Italics added.)

The appellate court thus invoked the doctrine of judicial estoppel. " 'Judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. [Citations.] The doctrine's dual goals are to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies. [Citation.] Application of the doctrine is discretionary.' " (*Koo v. Rubio's Restaurants, Inc.* (2003) 109 Cal.App.4th 719, 735 [135 Cal.Rptr.2d 415], fn. omitted.) The doctrine applies when "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) *the party was successful in asserting the first position* (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a

result of ignorance, fraud, or mistake." (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183 [70 Cal.Rptr.2d 96]; *Scripps Clinic v. Superior Court* (2003) 108 Cal.App.4th 917, 943 [134 Cal.Rptr.2d 101].)

That the appellate court concluded plaintiff should be judicially estopped from relying on the protections of the MFAA is understandable given that he has consistently disclaimed his right under the statute to arbitrate defendant's claim for unpaid legal fees and costs. Admittedly, permitting plaintiff to escape application of the arbitration agreement he signed by claiming it violated his rights as a client under the MFAA seems incongruous, when he never sought to take advantage of the MFAA's other provisions by arbitrating the fee issue under its terms. Nevertheless, we cannot agree the doctrine of judicial estoppel applies in this case. For plaintiff to rely on the MFAA in resisting his contractual agreement to arbitrate was not inconsistent, because one of the statute's key provisions makes arbitration voluntary for the client. (§ 6200, subd. (c).) Thus, from plaintiff's point of view, an order compelling him to arbitrate the issue of unpaid legal fees violated his rights under the statute. Because plaintiff's dual positions—one rejecting arbitration pursuant to the MFAA, the other relying on MFAA-based client protections—were not "totally inconsistent" (*Jackson v. County of Los Angeles, supra,* 60 Cal.App.4th at p. 183), we conclude the doctrine of judicial estoppel does not preclude him from relying on the MFAA in resisting arbitration.

### D. *Waiver*

Defendant Lerner contends plaintiff Aguilar waived his statutory rights under the MFAA because he sued her for legal malpractice. At the time the parties entered into their agreement to arbitrate, section 6201, subdivision (d) provided: "A client's right to request or maintain arbitration under the provisions of this article *is waived* by . . . (2) seeking affirmative relief against the attorney for damages or otherwise based upon alleged malpractice or professional misconduct." (Stats. 1993, ch. 1262, § 2, p. 7333, italics added.)[4] That plaintiff filed a lawsuit against Lerner in San Francisco Superior Court alleging professional malpractice is undisputed. Consequently, pursuant to the plain language of the statute, he waived his rights under the MFAA. (See *Juodakis v. Wolfrum, supra,* 177 Cal.App.3d 587 [client's filing of negligence action against attorney during pendency of MFAA arbitration waived right to compel arbitration of fee dispute].)

---

[4] This provision exists in substantially the same form today, although it has been slightly reworded. The present version of section 6201, subdivision (d) provides: "A client's right to request or maintain arbitration under the provisions of this article is waived by the client commencing an action or filing any pleading seeking either of the following: [¶] . . . [¶] (2) Affirmative relief against the attorney for damages or otherwise based upon alleged malpractice or professional misconduct." (Stats. 1996, ch. 1104, § 13.)

Plaintiff's counterarguments are unavailing. He first argues a consumer of legal services does not waive his or her rights under the MFAA by entering into a fee agreement *before* a fee dispute arises. This argument apparently references the 1996 amendment to section 6204, subdivision (a). At the time plaintiff agreed to arbitrate disputes with defendant the section stated: "The parties may agree in writing to be bound by the award of the arbitrators." (Stats. 1992, ch. 1265, § 6, p. 6021.) As amended, the statute now reads: "The parties may agree in writing to be bound by the award of the arbitrators *at any time after the dispute over fees, costs, or both, has arisen.*" (§ 6204, subd. (a), as amended by Stats. 1996, ch. 1104, § 16, italics indicating amendment.) Because plaintiff and defendant entered into their agreement before their dispute arose, plaintiff claims the agreement did not "waive" the protections of the MFAA.

Plaintiff misconceives the issue. Our conclusion he waived his rights under the MFAA rests not on the arbitration agreement he executed when he retained Lerner, but, rather, on the malpractice lawsuit he filed against her. Thus, whether he entered his arbitration agreement pre- or post-dispute is irrelevant, as is which version of the statute applies to the agreement.

Plaintiff next contends that although he "may have" waived his right to an MFAA arbitration by filing a malpractice lawsuit against defendant, "he did not and could not waive his statutory right to not be forced into a binding arbitration of an attorney fee dispute under the terms of an arbitration clause calling for binding arbitration." Plaintiff's unstated premise is that, although he waived his right to arbitration pursuant to the MFAA, he nevertheless retained some residual rights under the act in the form of the procedural protections the statutory scheme provides to clients. Specifically, plaintiff invokes the MFAA provisions that arbitration is voluntary for the client (§ 6200, subd. (c)) and that the results of an MFAA arbitration are nonbinding (§ 6204, subd. (a)).

That a client may legally rely on the MFAA's protections once he has waived application of that statutory scheme is not obvious. Plaintiff cites to no provision in the MFAA itself so providing, nor to any other legal authority holding or even suggesting the protections set forth in the statute are self-executing irrespective of a client's waiver of his right to MFAA arbitration under section 6201, subdivision (d). Nor has our own research discovered any authority acknowledging the continued viability of the MFAA's client protections after such a client waiver. Indeed, a close reading of the statute suggests the opposite. Section 6201, subdivision (a), which concerns an attorney's obligation to provide notice to a client that he or she may proceed pursuant to the MFAA, provides: "The rules adopted by the board of governors shall provide that an attorney shall forward a written

notice to the client prior to or at the time of service of summons or claim in an action against the client, or prior to or at the commencement of *any other proceeding against the client under a contract between attorney and client which provides for an alternative to arbitration under this article*, for recovery of fees, costs, or both." (Stats. 1996, ch. 1104, § 13, italics added.)[5]

■ The clear implication of this notice provision is that the Legislature understood a lawyer and client may choose to resolve their fee dispute by proceeding under the CAA when the client chooses not to proceed under the MFAA;[6] no other meaning can reasonably be gleaned from the reference to "any other proceeding against the client under a contract between attorney and client which provides for an alternative to arbitration under this article." If a client who receives such notice declines to proceed pursuant to the MFAA and chooses instead to go forward with a CAA arbitration (which typically is binding), to conclude the client nonetheless retains his MFAA right unilaterally to reject the arbitrator's decision would be nonsensical.

■ We presume that in the typical MFAA case, the client receives the mandated statutory notice pursuant to section 6201, subdivision (a) and thereafter expressly chooses either to proceed under the MFAA or not. If the client chooses to arbitrate "under this article" (i.e., pursuant to the MFAA), the client has the right to do so whether or not the parties had also executed an arbitration agreement. If the client fails to invoke his or her rights under the MFAA, such rights are waived entirely and, as here, the preexisting arbitration agreement is enforceable against the client, with no residual MFAA protections standing as an obstacle.[7]

In sum, we conclude that once a client files a malpractice lawsuit against his or her former attorney, the client waives any rights under the

---

[5] As it existed at the time the parties entered into their 1994 agreement to arbitrate, this section provided: "(a) The rules adopted by the board of governors shall provide that an attorney shall forward a written notice to the client prior to or at the time of service of summons *or claim* in an action against the client for recovery of fees, costs, or both, covered by the provisions of this article. The written notice shall be in such form as the board of governors may prescribe, but shall include a statement of the client's right to arbitration under this article. Failure to give this notice shall be a ground for the dismissal of the action." (Stats. 1993, ch. 1262, § 2, p. 7332, italics added.)

[6] Because plaintiff waived his MFAA rights, we have no occasion to address whether or to what extent an arbitration agreement is enforceable if a client properly invokes the right to arbitrate under the MFAA but subsequently exercises his statutory right to reject the arbitrator's decision and have a trial de novo. (§ 6204, subd. (a).)

[7] Plaintiff alleged below that defendant failed to give him notice under section 6201, subdivision (a), but we assume his waiver of his rights under the MFAA includes a waiver of his right to statutory notice.

MFAA. Because plaintiff Aguilar thus waived his MFAA rights, the trial court properly found his preexisting arbitration agreement with Lerner was enforceable against him.[8]

CONCLUSION

The judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Baxter, J., and Chin, J., concurred.

**CHIN, J.,** Concurring.—I agree with the majority that plaintiff Raul V. Aguilar waived his rights under the mandatory fee arbitration act (MFAA). (Bus. & Prof. Code, § 6200 et seq.)[1] Accordingly, I have signed that opinion. I also believe, however, that Aguilar's agreement to arbitrate this dispute is enforceable for a far more fundamental reason: An agreement for binding arbitration between an attorney and a client is enforceable under the California Arbitration Act (Code Civ. Proc., § 1280 et seq.; hereafter the CAA) *whether or not* the client requests and receives nonbinding arbitration under the MFAA. As the majority notes, this case "poses the question whether the parties' agreement to arbitrate is enforceable or is superseded by the MFAA." (Maj. opn., *ante*, at p. 985.) The answer, apparent from the statutes, is straightforward. The MFAA *complements*, not supersedes, the parties' agreement to arbitrate. The CAA and the MFAA coexist; neither preempts or supersedes the other.

Code of Civil Procedure section 1281, part of the CAA, provides: "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." This provision and the rest of the CAA represent a " 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' [Citations.] Consequently, courts will ' "indulge every intendment to give effect to such proceedings." ' " (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899].)

---

[8] We stress the limited nature of our holding today. Because neither party has raised it, we decline to address any issue concerning the Federal Arbitration Act (9 U.S.C. § 1, et seq.). In addition, because plaintiff and defendant entered into their arbitration agreement in 1994, we have no occasion to address any issues concerning the 1996 amendments to the MFAA. (Stats. 1996, ch. 1104, §§ 12–18.)

[1] Unless otherwise indicated, all further statutory citations are to the Business and Professions Code.

Nothing in the MFAA makes the arbitration agreement of this case unenforceable. The MFAA and the CAA create two very different types of arbitration. As the majority explains, arbitration under the MFAA is nonbinding, but arbitration under the CAA is binding. (Maj. opn., *ante*, at p. 985.)[2] Both may be given effect. Clients may, if they wish, request and obtain nonbinding arbitration under the MFAA. That arbitration may, and often will, resolve the dispute. But if the client does not request nonbinding arbitration, or if it is held but does not resolve the dispute, then the MFAA has played its role, and the matter would continue without it. Either party may then pursue judicial action unless the parties had agreed to binding arbitration. In that event, the CAA would apply, and the dispute would go to binding arbitration. This conclusion is consistent with the statutory language of both the MFAA and the CAA and the strong public policy in favor of binding arbitration as a means of resolving disputes.

Section 6201, subdivision (a), requires an attorney to inform the client of the client's right to arbitration under the MFAA "prior to or at the time of service of summons or claim in an action against the client, *or prior to or at the commencement of any other proceeding against the client under a contract between attorney and client which provides for an alternative to arbitration under this article* . . . ." (Italics added.) The italicized language acknowledges that the parties may agree to some proceeding to resolve the controversy other than a judicial action, such as binding arbitration under the CAA. The same section goes on to provide that if an attorney "commences an action in any court *or any other proceeding* . . . , the client may *stay* the action *or other proceeding*" by requesting arbitration under the MFAA, which must be done "prior to the filing of an answer in the action *or equivalent response in the other proceeding* . . . ." (§ 6201, subd. (b), italics added.) If the client does request nonbinding arbitration, "the action *or other proceeding* shall be automatically *stayed until* the award of the arbitrators is issued or the arbitration is otherwise terminated." (§ 6201, subd. (c), italics added.) This means that if the client requests nonbinding arbitration under the MFAA, the judicial action *or other proceeding* is *stayed*, but only *until* the nonbinding arbitration is finished. The other proceeding is merely stayed pending the nonbinding arbitration, not dismissed permanently.

In some respects, the MFAA statutory language is not entirely clear. Section 6201, subdivision (c), also states that a court may vacate the stay if it finds the matter not appropriate for nonbinding arbitration under the MFAA, and that "[t]he action or other proceeding may thereafter proceed subject to the provisions of Section 6204." Section 6204, in turn, provides that the parties to the nonbinding arbitration may agree to be bound by the arbitrators'

---

[2] For simplicity, I will sometimes just refer to arbitration under the MFAA as nonbinding arbitration and arbitration under the CAA as binding arbitration.

award, but, as it reads today, only *after* the controversy has arisen. It also states that if there is no such agreement, "either party shall be entitled to a *trial* after arbitration if sought within 30 days . . . ." (§ 6204, subd. (a), italics added.) The statute goes on to provide how "the trial after arbitration shall be initiated" both when an action is already pending and when no action is pending. (§ 6204, subds. (b)& (c).) In the latter situation, "the trial after arbitration shall be initiated by the commencement *of an action in the court* having jurisdiction over the amount of money in controversy . . . ." (§ 6204, subd. (c), italics added.)

Aguilar argues, and the court in *Alternative Systems, Inc. v. Carey* (1998) 67 Cal.App.4th 1034, 1042, footnote 5 [79 Cal.Rptr.2d 567] (*Alternative Systems*), concluded, that the references in section 6204 to a "trial" and "an action in . . . court" mean that after nonbinding arbitration, the dispute can only be resolved in *court*, and may not be resolved by binding arbitration even if the parties had agreed to such binding arbitration. I disagree. Although this reading of section 6204 is plausible if the section is viewed in isolation, the section does not exist in isolation but is part of the MFAA, which includes section 6201. It is "a cardinal rule of statutory construction, that 'every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.' " (*Landrum v. Superior Court* (1981) 30 Cal.3d 1, 14 [177 Cal.Rptr. 325, 634 P.2d 352].) The references to a trial and court action in section 6204 do not negate section 6201. In context, and in order to give effect to section 6201, section 6204 must be construed as merely providing the procedure to follow *if* the nonbinding arbitration is followed by a judicial action, not as prohibiting the parties from agreeing to some *other proceeding*. The latter interpretation would make meaningless section 6201's acknowledgment that the parties may agree to some form of dispute resolution other than judicial action, and its repeated references to some proceeding other than a court action.

*Alternative Systems, supra*, 67 Cal.App.4th 1034, held that if the client requests and obtains nonbinding arbitration under the MFAA, an agreement to binding arbitration cannot be given effect, and the dispute must proceed to a trial de novo. It concluded that the MFAA "preempted" the binding arbitration agreement. (*Id.* at p. 1044.) The majority cites *Alternative Systems* but expresses no opinion on whether it was correct. (Maj. opn., *ante*, at pp. 984, 989, fn. 6.) For the reasons I have stated, I believe it was not correct. By its very terms, the MFAA complements the CAA rather than preempts it.

*Alternative Systems, supra*, 67 Cal.App.4th 1034, cannot survive today's ruling. We are holding today that a client who does not request nonbinding arbitration has waived the MFAA's protections, and the binding arbitration agreement is enforceable. If *Alternative Systems* were to remain valid, that

would mean that a client who agreed to binding arbitration could evade that agreement simply by requesting nonbinding arbitration. The lesson future clients who had agreed to binding arbitration would learn from this case is that if they want to evade their agreement, they must demand nonbinding arbitration whether or not they otherwise want it. Future clients who wish to sue in court despite an arbitration agreement will be forced to go to nonbinding arbitration before they could do so. This situation would be unfortunate for two reasons. First, it would permit a client to evade an arbitration agreement by a simple procedural device, contrary to the letter and intent of the CAA. Second, it would require, as a prerequisite to evading the arbitration agreement, that the client pursue nonbinding arbitration. This would result in many sham nonbinding arbitrations that neither party wanted or intended to accept.

We cannot reasonably conclude that the Legislature created a system whereby clients who agree to binding arbitration may evade that agreement, but only if they go through the charade of demanding and obtaining a nonbinding arbitration that they may not want. Such a construction of the MFAA would *not* be " ' "indulg[ing] every intendment to give effect" ' " to a binding arbitration agreement. (*Moncharsh v. Heily & Blase, supra,* 3 Cal.4th at p. 9.) I believe the majority has effectively overruled *Alternative Systems, supra,* 67 Cal.App.4th 1034, and I would do so expressly.

Baxter, J., and Brown, J., concurred.

**MORENO, J.,** Concurring.—I concur in the judgment. I agree with Justice Chin that the issue here is less one of waiver than of the relationship between the mandatory fee arbitration act, Business and Professions Code section 6200 et seq. (MFAA), and the California Arbitration Act (CAA). (Code Civ. Proc., § 1280 et seq.) I further agree with Justice Chin that there is no incompatibility between the two arbitration acts, at least not in this case. But as the majority correctly points out, plaintiff and defendant entered into the arbitration agreement in 1994, and we have no occasion to consider the meaning of the 1996 amendments to the MFAA. (Maj. opn., *ante,* at p. 990, fn. 8, citing Stats. 1996, ch. 1104, §§ 12–18.) One of those amendments changed Business and Professions Code section 6204, subdivision (a), to provide that an MFAA arbitration can only be made legally binding "after the dispute over fees, costs, or both, has arisen." (Stats. 1996, ch. 1104, § 16.) At least one court has held that this amendment, among other things, evinces a legislative intent to preclude binding *predispute* agreements to arbitrate legal fees under the CAA. (*Alternative Systems, Inc. v. Carey* (1998) 67 Cal.App.4th 1034, 1042–1044 [79 Cal.Rptr.2d 567].)

Unlike Justice Chin, I express no opinion about whether *Alternative Systems* was correctly decided vis-à-vis post-1996 arbitration agreements,

which are not at issue in this case. I agree with the majority that a client may waive the right to challenge a CAA arbitration if he or she declines to undergo an MFAA arbitration but instead elects, after being properly notified of his or her MFAA rights, to participate in a CAA arbitration. (Maj. opn., *ante*, at p. 988.) But I do not understand the majority opinion to be deciding whether post-1996 predispute CAA agreements to arbitrate legal fees may be enforced, consistent with the MFAA, without the client's consent. I also express no opinion about whether a state statute that precludes binding predispute arbitration agreements of legal fees would be preempted by the Federal Arbitration Act. (See maj. opn., *ante*, at p. 990, fn. 8.)