Filed 12/4/25  Moultrie v. Haysbert CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JAMES L. MOULTRIE, III,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>NAZARETH M. HAYSBERT,<br><br>Defendant and Appellant. | B344566<br><br>(Los Angeles County<br>Super. Ct. No. 24STCV10288) |

APPEAL from orders of the Superior Court of Los Angeles County, Barbara Scheper and Dean J. Kitchens, Judges. Reversed and remanded.

Halpern May Ybarra Gelberg, A. Carley Palmer; Ariel Law and Judah J. Ariel for Defendant and Appellant.

Blut Law Group and Elliot S. Blut for Plaintiff and Respondent.

————————————

Defendant and appellant Nazareth M. Haysbert appeals from an order denying his petition to compel plaintiff and respondent James L. Moultrie to submit to binding arbitration. Haysbert also challenges the trial court order denying his motion for reconsideration. Haysbert contends the trial court erred by finding he was judicially estopped from arguing that an arbitration provision applied to the claims in Moultrie's amended complaint. We agree and reverse the order denying Haysbert's petition to compel arbitration.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Partnership agreement*

In January 2015, Haysbert and Moultrie signed a partnership agreement forming Haysbert Moultrie LLP. The agreement stated its operation began "November 7, 2014, and shall continue until automatically terminating on December 31, 2016. . . . The terms and conditions of this Agreement shall be continuously renewable for another year up to fifteen (15) days before the termination date with the unanimous consent of all partners." The agreement included a clause titled "Voluntary Termination," under which the parties could dissolve the partnership "at any time and without cause by written notice given from one partner to another . . . ."

The agreement established that Haysbert, as managing partner and 100 percent equity owner, was responsible for overseeing operations, including covering expenses and managing the partnership's accounting. Haysbert was the head of the partnership's Litigation Practice Group; Moultrie was the head of the Transactions Practice Group.

The agreement provided that "[n]either partner shall receive any salary for services rendered to the partnership." The agreement also did "not consist of any profit sharing between partners except through the referral process outlined in this Agreement." The referral clause required Haysbert and Moultrie "to refer cases and transactional projects" to each other. The referral fee was 20 percent of net profits for each matter referred, except for cases with net profits exceeding $1 million. In those cases, "the referral fee percentage [would] be discussed and agreed upon on a case by case basis by the partners involved."

The agreement contained a "Mediation and Arbitration" clause. It required the parties to first attempt to resolve "dispute[s] aris[ing] out of or in connection with th[e] Agreement" through informal consultation before proceeding to mediation. The clause continued: "If mediation is not successful in resolving the entire dispute or is unavailable, any outstanding issues will be submitted to final and binding arbitration. The arbitrator's award will be final, and judgment may be entered upon it by any court having jurisdiction within California."

### Moultrie's complaint

In April 2024, Moultrie filed a complaint alleging that Haysbert failed to pay the agreed-upon referral and attorney fees to compensate Moultrie for the legal work he performed. His complaint asserted causes of action for breach of contract, implied-in-fact contract, breach of fiduciary duty, and fraud.

Moultrie alleged that he and Haysbert "are partners of the law firm Haysbert Moultrie LLP." He claimed that in December 2016, the partnership agreement "lapsed by its terms and was not renewed." However, according to Moultrie, he and Haysbert "continued operating after January 1, 2017[,] as Haysbert

3

Moultrie LLP." Moultrie alleged that after the expiration of the agreement, he and Haysbert orally "agreed that the originating attorney for a case would receive 30% of the attorneys' fees recovered."

According to Moultrie, he informed Haysbert in 2019 that he had not received the agreed-upon compensation for work he performed on certain cases. Moultrie alleged Haysbert breached their post-2016 agreement by refusing to pay him the referral fee or to compensate him for work he performed on cases independently or with Haysbert "as partners." Moultrie also alleged that Haysbert breached his fiduciary duty by withholding the referral fee, withholding information about the status of cases Moultrie worked on, and "convincing Moultrie that the partnership would continue" before the parties' mediation, even though "[Haysbert] knew his plan was to dissolve the partnership."[1] Moultrie further claimed that Haysbert falsely stated that no funds were available to pay Moultrie, and he attempted to deceive Moultrie into abandoning his claim for additional attorney fees.

## Haysbert's first petition to compel arbitration

In July 2024, Haysbert filed a petition to compel arbitration. Haysbert's petition began by re-stating the allegations in Moultrie's complaint that the partnership agreement expired in 2016, it was not renewed, and, after that time, the parties had a different referral arrangement. The petition identified two cases for which Moultrie alleged he had not received compensation. The petition then asserted: "Notably, and importantly, Plaintiff's complaint does not provide any information on when these cases

---

[1] In October 2023, the parties unsuccessfully mediated the dispute.

4

were brought into the firm, when they were specifically settled, whether they were brought into the firm while the Agreement was in effect (2014 to 2016), or during the time the Parties had allegedly agreed to an oral compensations structure for referrals (after December 2016). The reason why Moultrie avoided including this critical information is simple, to avoid Arbitration."

Haysbert contended the arbitration provision applied to the dispute because several cases underpinning Moultrie's claims originated in 2014 and 2015, "during the term of the Agreement." Further, Haysbert contended that Moultrie's specific allegation that he was owed damages as a partner indicated he was challenging "his entire compensation structure since the beginning of his relationship with Haysbert, dating back to the initial term of the Agreement between November 7, 2014, and December 31, 2016." Haysbert concluded, "This, by [Moultrie's] own admission, subjects his demand of compensation to the Agreement and therefore is subject to the Arbitration Clause provision."

Moultrie opposed the petition on the ground that his claims did not " 'aris[e] out of or in connection with' " the partnership agreement, as required by the arbitration provision. Instead, Moultrie argued his claims arose from the continued partnership he and Haysbert implied from their conduct after the agreement expired in 2016. Moultrie stated in a supporting declaration that he and Haysbert "acknowledged to each other" in December 2016 "that the Partnership Agreement had terminated and its terms would not renew or continue." However, they "continued working together as partners under the name Haysbert Moultrie LLP and referred to each other as partners to the public." According to Moultrie, there was no written contract to continue the

partnership after 2016 and no agreement to arbitrate disputes arising during that period.

In his reply, Haysbert argued that the complaint was "written so broadly that it sweeps up as potential damages, compensation for any and all work [Moultrie] performed during the pendency of the Agreement," and was not limited to seeking payment for work Moultrie did after the partnership agreement ended. Haysbert argued that, in any event, the compensation structure giving rise to the dispute was set when the cases were referred, refuting Moultrie's claim that the dispute "did not occur until after the termination of the agreement." Finally, Haysbert contended that regardless of the timing, the arbitration clause was broad enough to "sweep[ ] up all claims that have any type of relationship to the Agreement," even if they related to cases "that did not per se originate during the term of the Agreement."

### *Trial court ruling and Moultrie's amended complaint*

In August 2024, the court held a hearing on the petition. No transcript of the hearing was prepared. The court's minute order indicates that it denied Haysbert's motion "as the agreement is too vague."[2] The court denied the motion "without prejudice to a renewed Motion to Compel Arbitration to an amended complaint as discussed in open court."

In October 2024, Moultrie filed an amended complaint alleging the same causes of action. Moultrie again alleged that the written partnership agreement "lapsed by its terms and was not renewed," but he and Haysbert continued their partnership

---

[2] Although the minute order referenced the "agreement" as vague, the trial court's later comments suggest this was a typographical error and the court in fact found the *complaint* was vague.

6

after the agreement expired. Moultrie claimed he and Haysbert "agreed that the originating attorney for any litigation matter going forward would receive Thirty Percent (30%) of the attorneys' fees recovered, separate and distinct from any percentages assigned for work performed on each matter." Moultrie again alleged that, although he referred matters to Haysbert and performed substantial work after the agreement terminated in 2016, Haysbert did not pay him the 30 percent origination fee or compensate him for work he performed on a host of matters. The amended complaint clarified that Moultrie was asserting each cause of action only "in regard to work performed and attorneys' fees earned subsequent to the termination of the Partnership Agreement."

### *Haysbert's second petition to compel arbitration*

Haysbert filed a second petition to compel arbitration. Haysbert argued that the Federal Arbitration Act (FAA) applied because Moultrie's claims stemmed from "the provision of legal services to clients based outside of California" and therefore involved interstate commerce. Haysbert argued that under the FAA, the arbitrator had the authority to decide preliminary questions about whether the partnership agreement expired at the end of 2016.

Alternatively, Haysbert contended that should the court determine it had the authority to decide the question, it should conclude the partnership agreement was valid and enforceable at all relevant times. He argued that the partnership agreement's "initial term . . . ran through December 31, 2016. However, by its terms, the agreement was 'continuously renewable' for an additional one-year term 'with the unanimous consent of all partners.' . . . In the lead-up to December 31, 2016, neither

7

Mr. Haysbert nor Mr. Moultrie expressed any desire to allow the Agreement to lapse, and continued to operate their partnership by its terms until the present day." In an accompanying declaration, Haysbert stated that neither he nor Moultrie agreed to terminate the agreement. Haysbert contended that Moultrie's continued acceptance of the benefits of the original agreement, such as Haysbert's payment of the partnership's expenses, established his consent to renewal of the agreement. Haysbert also again contended that the arbitration clause "survive[d] any termination of the Partnership Agreement" and "does not exclude disputes that otherwise fall within its scope simply because they did not arise until later in time."

Moultrie opposed the petition to compel, arguing that he and Haysbert did not continue the partnership agreement after 2016. Instead, they both acknowledged it had terminated and would not renew in December 2016.[3] Moultrie also argued that Haysbert had already conceded in the first petition to compel arbitration that the partnership agreement expired at the end of 2016. Moultrie asserted the first petition's references to the agreement's "term," its "pendency," and its expiration, were admissions that the agreement was not in effect after 2016. Moultrie claimed Haysbert had now reversed his position, without any evidence to support his new argument that the partnership continued to be in effect after 2016. Moultrie further argued that although Haysbert claimed the agreement was renewed, he did not assert that the parties unanimously agreed

---

[3] Moultrie did not address Haysbert's argument about interstate commerce, arguing instead that the FAA did not apply because the agreement was no longer in effect when the parties started working on the out-of-state litigation.

to renewal within 15 days before termination, as the agreement required.

Haysbert replied that the FAA applied and all questions about the validity of the partnership agreement after 2016 were for an arbitrator to decide. He also asserted that Moultrie did not explain why the first petition's failure to argue that the agreement remained in effect after 2016 should preclude Haysbert from making the argument in his second petition.

***Trial court ruling on the second petition***

In December 2024, the trial court held a hearing on the petition. Although Moultrie had not invoked judicial estoppel in his briefing, the court issued an oral tentative ruling denying the petition based on the doctrine. The court found that Haysbert's first petition "expressed [the] view that the agreement was of a finite term and that it was terminated, and one of the reasons why the plaintiff . . . did amend the complaint was I think the court's comment that . . . the initial complaint was very confusing in terms of when the event occurred that gave rise to plaintiff's claims; that is, whether they were before the agreement, after the agreement or during the agreement."

Haysbert's counsel argued that the first petition conceded only "that there was a finite term listed in the agreement, not . . . that the partnership itself had ceased." He further contended that under the Corporations Code, the partnership continued even if the written agreement's term ended. The court stated that even if the partnership survived the written agreement's expiration, the arbitration clause was not enforceable in the absence of a written agreement. The court explained, "[Y]ou only get to compel arbitration based on the written agreement that agreed to arbitration. [¶] . . . [¶] And

9

that was no longer in effect."  Haysbert's counsel disagreed that the agreement was no longer in effect.  He contended that because the parties continued acting and performing their duties as partners under the agreement, the agreement remained in effect even after the expiration of its term.  Moultrie's counsel submitted on the court's tentative.

The court denied the petition.  In its written ruling, the trial court concluded judicial estoppel precluded Haysbert from claiming that the parties' dispute was subject to a valid and enforceable agreement to arbitrate.  The court found that the statements in Haysbert's first petition that the agreement was "limited in term," that Moultrie's complaint concerned work that occurred " 'while the Agreement was in place' " between 2014 and 2016, and that the agreement "expired" in 2016, indicated that he took the position that the partnership agreement terminated at the end of 2016.  The court determined that Haysbert "successfully asserted" this position, he took a "completely inconsistent" position in his second petition, and he did "not allege that the first position was taken out of ignorance, fraud, or mistake."

The court further concluded that Haysbert's "inconsistent positions threaten[ed] the integrity of the judicial system by muddling the interpretation of a contract."  The court also stated that allowing Haysbert to assert the contrary position would result in a waste of time and resources, since Moultrie had "amend[ed] his complaint through reliance on" Haysbert's earlier position.  The court thus "held [Haysbert] to his previous position that the Agreement terminated in 2016," and concluded: "Because the Agreement terminated in 2016, [Haysbert] has not alleged the existence of a written agreement to arbitrate the

10

present controversy, which consists solely of post-Agreement work, as required under Code of Civil Procedure section 1281.2."

Haysbert timely moved for reconsideration. The matter was reassigned to a different trial judge, who denied the motion.[4] Haysbert timely appealed from the orders denying the second petition to compel arbitration and the motion for reconsideration. The trial court granted Haysbert's motion to stay the proceedings pending appeal.

## DISCUSSION

## I.  Applicable Legal Principles and Standard of Review

" ' "Judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. . . .  The doctrine's dual goals are to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies.  [Citation.] Application of the doctrine is discretionary." ' [Citation.]  The doctrine applies when '(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.' [Citations.]" (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986–987.)

---

[4]      We grant Haysbert's motion to augment the record with the notice of case reassignment, Haysbert's motion to stay proceedings pending appeal, the court's ruling granting the motion to stay, and a minute order denying Moultrie's request for injunctive relief.

Judicial estoppel "is an ' "extraordinary remed[y] to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice." [Citation.]' [Citation.]" (*Daar & Newman v. VRL International* (2005) 129 Cal.App.4th 482, 491.) "Because of its harsh consequences, the doctrine should be applied with caution and limited to egregious circumstances." (*Gottlieb v. Kest* (2006) 141 Cal.App.4th 110, 132.)

"The determination of whether judicial estoppel can apply to the facts is a question of law reviewed de novo, i.e., independently. [Citations.] [B]ut the findings of fact upon which the application of judicial estoppel is based are reviewed under the substantial evidence standard of review." (*Blix Street Records, Inc. v. Cassidy* (2010) 191 Cal.App.4th 39, 46.) "Even if the necessary elements of judicial estoppel are found, because judicial estoppel is an equitable doctrine [citations], whether it should be applied is a matter within the discretion of the trial court [citations]. The exercise of discretion for an equitable determination is reviewed under an abuse of discretion standard." (*Id.* at pp. 46–47.)

## II. Judicial Estoppel Did Not Apply On This Record

Judicial estoppel protects against the abuse of process by prohibiting parties from " 'first [advocating] one position, and later, if it becomes beneficial, to assert the opposite.' [Citation.]" (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 181.) To warrant application of the doctrine, "[t]he position[s] must be clearly inconsistent so that one necessarily excludes the other." (*Law Offices of Ian Herzog v. Law Offices of Joseph M. Fredrics* (1998) 61 Cal.App.4th 672, 678 (*Herzog*).) A party asserts totally inconsistent positions warranting judicial estoppel by affirmatively taking diametrically opposing, irreconcilable

12

views on a single issue.  (See, e.g., *Vaghashia v. Vaghashia* (2024) 106 Cal.App.5th 188, 196 [party that moved to enforce settlement agreement could not later move to vacate agreement as unenforceable]; *DotConnectAfrica Trust v. Internet Corp. for Assigned Names & Numbers* (2021) 68 Cal.App.5th 1141, 1160 (*DotConnectAfrica*) [party that told arbitrators it waived court trial precluded from bringing subsequent dispute in court]; *Padron v. Watchtower Bible & Tract Society of New York, Inc.* (2017) 16 Cal.App.5th 1246, 1249 [party that argued for monetary sanctions barred from later arguing that sanctions were unauthorized]; *Herzog*, at p. 679 [defendant who orally stipulated that parties could be ordered to binding arbitration precluded from later opposing petition to confirm award on basis that arbitration was non-binding].)

"The case law speaks of a party successfully ' "asserting the first position" ' (*Aguilar v. Lerner*, *supra*, 32 Cal.4th at pp. 986– 987), indicating judicial estoppel does not occur absent an affirmative assertion.  In other words, silence and lack of objection does not result in judicial estoppel." (*Brown v. Ralphs Grocery Co.* (2018) 28 Cal.App.5th 824, 842.)  We consider the context of the relevant legal assertions when determining whether a party took inconsistent positions.  (*DotConnectAfrica*, *supra*, 68 Cal.App.5th at p. 1160.)

Here, Haysbert did not take opposing and mutually exclusive positions regarding whether the terms of the partnership agreement, including specifically the arbitration provision, applied to Moultrie's claims if they arose after 2016.  Moultrie's original complaint admitted the partnership agreement was in effect between 2014 and 2016  The complaint alleged that different terms applied to his partnership with

13

Haysbert before and after 2016, and it was vague as to when Moultrie's claims arose.  Haysbert's first petition argued the complaint's own allegations conceded the applicability of the partnership agreement and the arbitration provision to the dispute because it asserted claims arising before the end of 2016.  (See *Ahern v. Asset Management Consultants, Inc.* (2022) 74 Cal.App.5th 675, 687 [petition to compel arbitration must establish whether agreement to arbitrate exists and if dispute falls within agreement's scope].)  As such, Haysbert's position did not require him to *also* argue that the parties had renewed the partnership agreement under the same terms, such that the arbitration provision continued to apply even after 2016.

The first petition's language does not support the conclusion that Haysbert took irreconcilable positions.  For example, the phrase "after the Agreement expired" appears twice in Haysbert's initial petition.  In the first instance, Haysbert argued that the work Moultrie performed on a specific case "for the most part occurred during the entire time the Agreement was in place . . . .  [T]he fact that [it] . . . may have resolved after the Agreement expired has no relevance at all."  In the second instance, Haysbert described Moultrie as arguing that the arbitration provision did not apply "because in his mind the alleged disagreement between Plaintiff and Haysbert purportedly did not occur until after the Agreement expired."  Haysbert used the phrase to address and characterize Moultrie's arguments, not to adopt or advocate for the position that the agreement did, in fact, terminate in 2016.  He did not assert an "unequivocal, unconditional, and unlimited" argument that the partnership expired in 2016, or that the arbitration provision would not

14

govern disputes arising after that time. (*DotConnectAfrica, supra*, 68 Cal.App.5th at p. 1160.)

Moreover, in both petitions, Haysbert contended that the arbitration provision applied, irrespective of the duration of the partnership agreement. In the first petition, Haysbert argued the arbitration provision was broad enough to cover claims arising from cases that did not originate during the undisputed term of the agreement. In the second petition, he argued the arbitration provision survived termination of the written partnership agreement and did not "exclude disputes that otherwise fall within its scope simply because they did not arise until later in time."

Challenges to the enforceability or applicability of an arbitration clause are distinct from challenges to the validity of the underlying contract. (*Nielsen Contracting, Inc. v. Applied Underwriters, Inc.* (2018) 22 Cal.App.5th 1096, 1107–1108; see also *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street* (1983) 35 Cal.3d 312, 322 ["agreement" in federal and state arbitration statutes refers to agreement to arbitrate "as distinguished from the overall contract in which that agreement is contained"].) Thus, even if Haysbert conceded the written partnership agreement expired in 2016 for purposes of arguing that Moultrie's claims were clearly arbitrable because they arose before 2016, that concession did not "necessarily exclude" his other, consistent position, that the dispute nonetheless fell within the scope of the arbitration provision. (*Herzog, supra*, 61 Cal.App.4th at pp. 678–679.)

"Judicial estoppel is applied only against a party that has taken positions or made statements that are 'totally inconsistent.' [Citation.] Put another way, the party must have taken positions

15

that are so irreconcilable that . . . ' "one necessarily excludes the other." ' [Citations.]" (*Bell v. Wells Fargo Bank* (1998) 62 Cal.App.4th 1382, 1387, fn. omitted.)  Further, "[j]udicial estoppel is an extraordinary remedy that is applied 'with caution.' [Citation.]  To invoke the rule, a party's inconsistent position must arise from intentional wrongdoing or an attempt to obtain an unfair advantage." (*Kitty-Anne Music Co. v. Swan* (2003) 112 Cal.App.4th 30, 35 (*Kitty-Anne*).)

There was no evidence here to support a finding that Haysbert was attempting to play " ' "fast and loose with the court[.]" ' [Citation.]" (*Kitty-Anne, supra,* 112 Cal.App.4th at p. 36.)  His position in the first petition to compel arbitration was responsive to Moultrie's complaint as it was pled at that time. Haysbert did not independently assert that the partnership agreement expired in 2016.  While he described the written partnership agreement as being "in place" or "in effect" through 2016, he did so in the context of arguing that Moultrie's complaint arose entirely before any expiration of the agreement. Haysbert would have gained nothing by affirmatively arguing in the first petition to compel that the arbitration provision would *not* apply to disputes arising after 2016.  He did not appear to ever take the position that if the partnership agreement expired in 2016, the parties were no longer bound to arbitrate disputes that arose from their ongoing work together after 2016.  It was not entirely inconsistent for Haysbert to respond to Moultrie's original complaint by asserting the claims arose when the written partnership agreement was undisputedly in effect, and, when Moultrie amended his complaint to allege claims arising in a different time period, for Haysbert to respond by disputing that the partnership agreement—or the arbitration provision—no

16

longer governed the parties' relationship or disputes that arose after 2016.

The evidence was insufficient to support the conclusion that Haysbert took totally inconsistent positions.  We therefore reverse the trial court's order denying his petition to compel arbitration based on judicial estoppel.  Haysbert raised several additional arguments below in support of his petition to compel arbitration, including whether the FAA governs the parties' agreement to arbitrate.  These issues rely in part on factual findings that were not made below in light of the trial court's application of judicial estoppel.  We therefore remand to the trial court to consider in the first instance the remaining issues raised by Haysbert's petition.

## DISPOSITION

The trial court's order denying appellant's petition to compel arbitration is reversed and the matter is remanded for further proceedings.  Appellant to recover costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EGERTON, Acting P. J.

HANASONO, J.