[No. F052173. Fifth Dist. Apr. 24, 2008.]

EDWIN LOEB, Plaintiff and Appellant, v.
CINDY RECORD et al., Defendants;
BARADAT & EDWARDS, Claimant and Respondent.

COUNSEL

Edwin Loeb, in pro. per., for Plaintiff and Appellant.

Baradat & Edwards and David G. Edwards for Claimant and Respondent.

OPINION

DAWSON, J.—This appeal concerns a dispute between a law firm and its client over the law firm's right to be paid for professional services for handling the client's personal injury lawsuit. The personal injury lawsuit was resolved when (1) a judgment was entered under the client's offer to compromise pursuant to Code of Civil Procedure section 998[1] for $100,000 (policy limits) and (2) the defendant's insurance company satisfied the judgment by depositing the funds with the superior court.

The parties arbitrated their fee dispute through the California State Bar in accordance with California's Mandatory Fee Arbitration Act (MFAA), Business and Professions Code section 6200 et seq. The arbitrator awarded the law firm a one-third contingency fee and costs.

The client objected to the arbitration award by filing a motion in opposition to the law firm's lien for attorney fees in the personal injury lawsuit. The law firm filed a motion requesting that the superior court disburse part of the settlement proceeds to the law firm to satisfy the arbitration award. The superior court denied the client's motion, granted the law firm's motion, and ordered the clerk to disburse $35,028.82 of the settlement funds to the law firm.

The client appealed, claiming the orders contained reversible error. The client contends (1) the arbitration award is not binding and the underlying claim for attorney fees lacked merit or (2) alternatively, if the arbitration award is binding, he should be granted relief from the award due to a mistake or excusable neglect. He further contends that, if the superior court lacked the authority to determine the arbitration award was not binding, it also lacked the authority to enforce that award.

We conclude that the client failed to follow the proper procedure for preventing the arbitration award from becoming binding. In the circumstances

---

[1] All further statutory references are to the Code of Civil Procedure unless indicated otherwise.

of this case, the client was required to file a new lawsuit and the client's motion did not meet this requirement. Therefore, the superior court correctly denied the client's motion in opposition to the law firm's lien.

We also conclude that the law firm failed to follow the correct procedures for enforcing an arbitration award. It did not file a petition to confirm the award and obtain a judgment of confirmation. Therefore, the superior court erred in granting the law firm's motion and directing the clerk of the court to deliver funds to it.

Accordingly, the superior court's December 14, 2006, order is affirmed in part and reversed in part.

## FACTS AND PROCEEDINGS

Appellant Edwin Loeb is representing himself in this appeal. Respondent Baradat & Edwards is a law firm organized as a partnership. David G. Edwards is a partner in that firm. Baradat & Edwards represented Loeb in a personal injury lawsuit and David G. Edwards was the attorney of record who handled that lawsuit.[2]

On April 4, 2003, Loeb was in a motor vehicle accident at an intersection located in Fresno, California. He alleges that a woman, who was on a cell phone at the time, ran a red light and crashed into his car at a high rate of speed. The woman was driving her mother's vehicle, with permission, at the time of the accident. The mother maintained an insurance policy with AMCO Insurance Company that had per person policy limits of $100,000.

Loeb asserts that the accident caused him moderate but permanent injuries to his back, neck, and a facial nerve. Loeb asserts the nerve damage causes occasional spasms to the left side of his face, resulting in an unattractive and embarrassing squint.

Approximately six weeks after the traffic accident, Loeb had blood clots that paralyzed both of his legs. The clots were surgically removed and Loeb spent almost a week in a critical care unit followed by two months recuperating at home. Whether the blood clots were caused by the trauma of the traffic accident is a question of fact that remains uncertain at this stage of the proceedings.

---

[2] For convenience, further reference to Edwards includes both the law firm of Baradat & Edwards and David G. Edwards.

The medical expenses incurred in treating Loeb's blood clots were covered under Kaiser Hospital's Adult Care Program (Kaiser). Loeb is a member of that program and, as a result, he paid only $500 for those medical services. Notwithstanding the uncertainty over whether the blood clots were caused by the traffic accident, Kaiser asserted it was entitled to reimbursement of medical expenses out of any judgment or settlement made with the driver of the car that struck Loeb's vehicle.

Loeb apparently tried to settle his traffic accident claim by negotiating directly with AMCO Insurance Company. The negotiations did not result in a settlement, in part because the insurer doubted whether the blood clots were a problem caused by the traffic accident.

In August 2004, Loeb retained Edwards to represent him in a lawsuit against the driver of the other car. Loeb and Edwards signed a written retainer agreement that provided in part:

". . . Client agrees to pay to Attorneys for their services a retaining fee for legal services as negotiated between the above-named Attorneys and Client on 8-05, 2004, is 33 1/3 percent before arbitration or trial commences or 33 1/3 percent thereafter of any amounts received or recovered by Client in said matter by way of settlement, judgment, or otherwise after reimbursement to Attorneys of the costs and disbursement made on behalf of Client. . . .

"Client hereby gives and grants unto Attorneys a lien on said cause of action, and proceeds of any judgment or settlement thereunder, to the extent of the share and sums hereinbefore mentioned as Attorneys' fees and costs and disbursements; and Client expressly assigns to Attorneys any proceeds and any judgment or settlement relative to said cause of action, to the extent of said Attorneys' fees and costs and disbursements."

Edwards filed a complaint for Loeb's personal injuries in Fresno Superior Court on February 4, 2005 (the personal injury action).

On January 13, 2006, Edwards served counsel for the defendants in the personal injury action with an offer to compromise under section 998. The offer was for the policy limits of $100,000, with the parties to bear their own costs. Loeb appears to assert that the offer was extended by Edwards without his knowledge or approval. In contrast, a declaration filed by David G. Edwards asserts that he discussed the situation with Loeb in detail, explained how insurance policy limits worked, and obtained his authority and consent before making the offer to compromise under section 998.

A mediation was held in the personal injury action on February 7, 2006. A disagreement arose between Loeb and Edwards regarding Kaiser's claim to reimbursement of medical expenses out of any settlement proceeds. David G. Edwards describes part of the disagreement as follows:

". . . At the mediation, it became clear that Mr. Loeb insisted upon not dealing with his statutory and contractual obligations with Medicare/Kaiser, and refused to accept the reality that those liens needed to be addressed. [¶] . . . [¶]

"In any event, the mediation went on for some time with me, and frankly, the Judge discussing many of these issues with Mr. Loeb. When it became apparent to Mr. Loeb that I would not and could not agree to ignore Kaiser and Medicare, he attempted to have us fraudulently claim that we were no longer claiming his accident had anything to do with his Kaiser treatment, and that Allied could pay him $100,000.00 for his chiropractic injuries. I explained that I would not take that position as we were claiming the Kaiser treatment, and in any event, his case had a value no where near $100,000.00 with only his chiropractic injuries."

Loeb's account of what happened at the mediation is different. For example, a February 10, 2006, letter from Loeb to counsel for the defendant stated that David G. Edwards had resigned as Loeb's attorney, had stormed out of the mediation, and had "announced his decision to quit being [Loeb's] Attorney when it became apparent that your $75,000 offer was unacceptable to me." The letter also indicates a willingness by Loeb to end the litigation for $100,000.

Shortly after the mediation, counsel for the defendants indicated a willingness to settle on the terms stated in the offer to compromise. Defense counsel sent Edwards a request for dismissal and a receipt and release. The receipt and release stated that Loeb, in consideration of $100,000 paid to him by AMCO Insurance Company,[3] released and discharged the defendant driver, her mother, and the insurance company from all claims and liabilities connected with the accident and personal injury action.

Loeb did not sign and return the request for dismissal or the receipt and release. As a result, counsel for the defendants sought to implement the terms of the offer to compromise by another course. He filed a notice of acceptance of offer to compromise with the superior court in late February.

---

[3] Elsewhere in the record on appeal, the insurance company is referred to as Allied Mutual.

In March 2006, Edwards filed a motion to be relieved as counsel along with a supporting declaration. David G. Edwards's declaration stated that the attorney-client relationship had eroded to the point that he could no longer represent Loeb and that Loeb "refuse[d] to execute any documents to either consumate [*sic*] the resolution of the case or to allow attorney to be substituted out." The superior court granted the motion and filed an order on March 23, 2006, granting Edwards's motion to be relieved.

On March 24, 2006, judgment pursuant to the acceptance of the offer to compromise was signed and filed by the superior court.

On March 27, 2006, Edwards filed a notice of lien for attorney fees and costs in the personal injury action. The notice asserted a lien against any recovery obtained by Loeb in the amount of $2,543.23 for costs incurred and reasonable attorney fees in the amount of $32,485.59.[4]

Notice of entry of the judgment in the amount of $100,000 was filed in early April 2006.

In July 2006, counsel for defendants in the personal injury action filed a motion for an order requiring Loeb to execute a satisfaction of judgment or, alternatively, for an order to the clerk of the court to enter satisfaction of judgment. The motion asserted that Loeb would not accept a settlement draft and would not execute a satisfaction of judgment.

In September 2006, the superior court (1) granted the unopposed motion for entry of satisfaction of judgment, (2) ordered the defendants to deposit $100,000 with the clerk of the court and (3) directed the clerk to hold the funds in Loeb's name and to enter satisfaction of judgment. The superior court also noted the existence of Edwards's lien and that the money should not be disbursed to Loeb without a court order.

In the meantime, Loeb and Edwards arbitrated their dispute over attorney fees and costs under the MFAA and the fee arbitration program of the Fresno County Bar Association. The arbitration hearing was held in July 2006 and the arbitration award was served by mail on the parties on August 4, 2006. Enclosed with the arbitration award was a document titled "Notice of Your Rights After Fee Arbitration (Revised October 5, 2001)."

---

[4] The amount of attorney fees claimed equals one-third of $97,456.77, which is $100,000 less the $2,543.23 in costs.

The notice described the steps that a party dissatisfied with the arbitration award must take to prevent the award from becoming binding and advised the dissatisfied party that the steps must be taken within 30 days after the arbitration award was served. Specifically, the notice stated that "[i]f no lawsuit about the fees has been filed yet, then you must file your own **lawsuit** in the **proper court**" to prevent the award from becoming binding.

In addition, the notice described how a party who was awarded money and was satisfied with the arbitration award could enforce the award. Page five of the notice stated: "Any party who is owed money has the right to request court orders allowing that party to take property or money from the other party's paycheck, and/or bank accounts. To get those court orders, you must first obtain a judgment confirming the arbitration award." The notice specifically addressed (1) how to obtain a judgment confirming the arbitration award, (2) how long a party had to file a petition for confirmation, and (3) the party's rights after confirmation of the arbitration award. In particular, the notice stated that after the award is confirmed and a judgment is entered, the party becomes a judgment creditor with "a right to 'execute' the judgment. That means you may be entitled to court orders allowing you to collect your money by garnishing the other party's paycheck or bank accounts, and/or placing a lien on his or her property."

The arbitrator ruled in favor of Edwards. The arbitration award stated that Loeb was to pay Edwards the sum of $32,485.59 as a fee for services rendered and the sum of $2,593.23, which included an additional $50 incurred in the arbitration process, for out-of-pocket costs.

Loeb was dissatisfied with the arbitration award and attempted to contest it by filing a motion in the personal injury action on August 31, 2006. Loeb thought his motion prevented the arbitration award from becoming binding because it was filed within 30 days after the arbitration award had been mailed. In his papers, Loeb contended that "Edwards deliberately failed to inform me of his intention to pay Kaiser and that I would only get one tenth of the settlement. I would have to be a complete idiot to agree to a settlement that I knew would only give me less than ten cents of every settlement dollar." In addition, Loeb contended that he felt "Edwards [*sic*] actions diametrically opposed my best interest when he planned to give Kaiser most of my settlement, when he was not legally obligated to do so. Because of his failure to look after my interest, he is undeserving of a fee."

On September 14, 2006, Edwards filed (1) a notice of motion for partial disbursement of judgment or settlement proceeds, (2) a memorandum of

points and authorities in support of the motion, and (3) a declaration in support of the motion.

Edwards's motion for partial disbursement asserted that the arbitration award had become binding and final. Based on that assertion, Edwards requested the superior court to order the distribution of part of the proceeds on deposit with the court to satisfy the arbitration award. Edwards's moving papers did not request confirmation of the arbitration award or entry of a judgment of confirmation.

A hearing on the two motions was held on October 11, 2006. The tentative ruling of the court was to deny Loeb's motion in opposition to the lien and to deny Edwards's motion to disburse fees and costs from settlement funds. With respect to the denial of Loeb's motion in opposition to the lien, the tentative ruling stated that former counsel was permitted "to file such a notice and the court has no jurisdiction to determine the validity of the underlying lien or to expunge it. (*Carroll v. Interstate Brands Corp.* (2002) 99 Cal.App.4th 1168, 1174 [121 Cal.Rptr.2d 532].)" With respect to Edwards's motion, the tentative ruling stated that the court had no jurisdiction to deduct the fees and costs from the settlement proceeds and that, where the former counsel is not a party to the underlying action, former counsel must bring an independent action to enforce the contractual lien.

The superior court did not adopt its tentative ruling. Instead, it filed a written ruling on December 14, 2006, denying Loeb's motion and granting Edwards's motion with directions to the clerk of the court to forward $35,028.82 to Baradat & Edwards and the balance of $64,971.18 to Loeb.

On February 1, 2007, Loeb filed a notice of appeal from the December 14, 2006, ruling.

## DISCUSSION

### I. *Standard of Review*

The issues this court must decide to resolve this appeal concern (1) the proper interpretation of provisions of the Business and Professions Code and (2) the application of that interpretation, as well as certain provisions from the Code of Civil Procedure, to the facts of this case. Issues of statutory interpretation and the application of that interpretation to a set of undisputed facts are questions of law subject to independent review by this court. (*Twedt v. Franklin* (2003) 109 Cal.App.4th 413, 417 [134 Cal.Rptr.2d 740].)

II. *Arbitration of Fee Disputes Between Attorneys and Clients*

In 1978, California's Legislature enacted the MFAA to address disputes concerning the fees charged by attorneys for professional services. (*Law Offices of Dixon R. Howell v. Valley* (2005) 129 Cal.App.4th 1076, 1086 [29 Cal.Rptr.3d 499] (*Valley*).) The goal of the MFAA is to obtain the fair resolution of fee disputes. (*Valley*, at p. 1087.) To achieve this goal, the MFAA created a mechanism for the arbitration or mediation of fee disputes between attorneys and clients. (Bus. & Prof. Code, § 6200, subd. (a).) The mediation and arbitration procedures were intended to reduce the inherent advantage that attorneys would have if such disputes were resolved through lawsuits. (*Valley*, *supra*, at p. 1087.)

■ Under the MFAA, certain disputes between attorneys and clients are submitted to arbitration conducted by the local bar association. (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 984 [12 Cal.Rptr.3d 287, 88 P.3d 24].) The MFAA applies only to disputes concerning legal fees, costs, or both and specifically excludes claims for affirmative relief, such as damages resulting from attorney malpractice or misconduct. (*Aguilar*, at p. 984; see Bus. & Prof. Code, § 6200.)

In contrast to the limited application of the MFAA, the California Arbitration Act (CAA), section 1280 et seq., sets forth a comprehensive statutory scheme regulating private arbitration in California. (*Aguilar v. Lerner*, *supra*, 32 Cal.4th at p. 983.) Our Supreme Court has described the MFAA's arbitration scheme as separate and distinct from the scheme established by the CAA. (*Aguilar*, at p. 983.)[5] The separation of the two acts, however, is not total because Business and Professions Code section 6203, subdivision (b) incorporates certain provisions of the CAA into the MFAA.

■ One of the distinct characteristics of arbitration under the MFAA is that it is voluntary for the client and mandatory for the attorney if commenced by the client. (Bus. & Prof. Code, § 6200, subd. (c).) Thus, a client can force an unwilling attorney to arbitrate the fee dispute, but an unwilling client cannot be forced to arbitrate by an attorney. (*Aguilar v. Lerner*, *supra*, 32 Cal.4th at p. 984.)

---

[5] Further background on the MFAA, the CAA and the relationship of the two statutes is available in a law journal case note. (Note, *Aguilar v. Lerner: California's Highest Court Clarifies Issues of Judicial Estoppel and Waiver, but the Power Struggle Between Separate Arbitration Acts Stands Unresolved* (2004) 3 J. Am. Arb. 329, 330–334.) The unresolved questions mentioned in the case note are not raised in this appeal. (E.g., *id.* at p. 338 [our Supreme Court did not resolve whether the nonbinding arbitration under the MFAA and the binding arbitration of the CAA can coexist].)

Another distinct characteristic of arbitration under the MFAA concerns the finality of the arbitration award. Typical arbitration awards are binding. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899] [term "arbitration" connotes a binding award; thus a private agreement to arbitrate generally is interpreted to include an implied agreement the arbitrator's decision will be binding and final].) In contrast, an arbitration award rendered under the MFAA becomes binding if it is not challenged by the proper procedure.[6] Specifically, the award is not binding if either party initiates a trial after arbitration within 30 days after mailing of the notice of the award. (Bus. & Prof. Code, § 6204, subds. (b), (c).) This procedure places the burden on the party dissatisfied with the arbitration award to take steps to prevent the award from becoming binding.

The issues raised in this appeal include (1) whether Loeb followed the proper procedures to prevent the arbitration award from becoming binding and (2) whether Edwards followed the proper procedure for enforcing the arbitration award.

III. *Loeb's Motion in Opposition to Lien*

A. *Grounds Raised in Loeb's Motion*

Loeb disagreed with the arbitrator's award. As a result, he filed a motion in opposition to Edwards's lien for attorney fees and costs and the arbitration award. Loeb contended that Edwards "was intentionally deceitful and, misrepresented the facts and which constitutes fraud."

Loeb asserted that Edwards failed to inform him of significant information concerning the negotiations with AMCO Insurance Company and of Edwards's intention to pay Kaiser from the anticipated settlement. In Loeb's view, he had paid Kaiser its $500 fee and Kaiser was not entitled to any more. Also, Loeb asserted Edwards altered the written retainer agreement by writing on its margin that there was a lien from Kaiser that had to be paid and, because Loeb had not agreed to the change, the retainer agreement was void. As a result, Loeb requested the superior court to set aside the arbitration award and lien.

Loeb made his motion based on the assumption that he had complied with the 30-day requirement contained in Business and Professions Code section 6204, subdivision (b). His opening appellate brief asserts that he was

---

[6] Alternatively, the attorney and client may agree in writing to be bound by the arbitration award rendered pursuant to the MFAA. (Bus. & Prof. Code, § 6204, subd. (a).)

informed of the arbitrator's award on August 4, 2006, and that he "filed a suit in opposition to the Arbitrator's award on August 31, 2006. My filing was twenty seven days after I was notified of the Arbitrator's biased Award. This is proof that I had met the thirty day filing requirement." Loeb states the superior court ruled that he had "failed to file within thirty days as required by the Bar Association Arbitration rules. It is this ruling that I am requesting that you Appellate Judges overturn."

The superior court determined that (1) the personal injury action was not a "pending action" for purposes of the MFAA and (2) Loeb's motion was not the equivalent of initiating a trial after arbitration by the commencement of an action. Thus, the superior court concluded that the arbitration award had become binding.

### B. *Issues*

Based on Loeb's motion and his appellate brief, this court must decide the following questions.

First, for purposes of Business and Professions Code section 6204, was Loeb's personal injury action an "action pending" when Loeb filed his motion challenging the arbitration award?

Second, did Loeb's motion satisfy the statutory requirement that he initiate a trial after arbitration within 30 days after mailing of the notice of the award and, as a result, prevent the arbitration award from becoming binding? (Bus. & Prof. Code, § 6204, subds. (b), (c).)

The steps that Loeb took to challenge the arbitration award are not disputed. Accordingly, the questions presented are questions of law that involve the interpretation of the MFAA and the application of that interpretation to the undisputed facts of this case. (See pt. I., *ante*.)

### C. *Analysis*

#### 1. *Action pending*

Business and Professions Code section 6203, subdivision (b) provides in relevant part that "the arbitration award shall become binding upon the passage of 30 days after mailing of notice of the award, unless a party has, within the 30 days, sought a trial after arbitration pursuant to Section 6204."

Business and Professions Code section 6204, subdivision (b) sets forth the procedures that must be followed "[i]f there is an action pend-

ing . . . ." Section 6204, subdivision (c) of Business and Professions Code addresses the alternative in which "no action is pending . . . ."

To identify which alternative applies in this case, we must determine whether or not the personal injury action was an "action pending" for purposes of the MFAA.

### a. *Action pending and necessary parties*

■ We conclude that the term "action pending" used in the MFAA refers to a lawsuit in which the parties include both the attorney and the client who had their fee dispute arbitrated.

The requirement that the attorney and client be parties to the lawsuit is not stated explicitly in sections 6203 and 6204 of the Business and Professions Code. The requirement, however, must be implied as a matter of law because the court must have personal jurisdiction over both parties to the fee dispute before it can hold a trial on the dispute. Without jurisdiction over both parties, the court could not enter a valid decision affecting the rights and obligations of each party. (See *Brown v. Superior Court* (2004) 116 Cal.App.4th 320, 328 [9 Cal.Rptr.3d 912] [attorney is not a party to underlying action; therefore, court in underlying action acts in excess of its jurisdiction when it rules attorney is entitled to foreclose a lien on judgment entered in that action].)

■ In addition, our interpretation that both the attorney and the client must be parties to the "action pending" is consistent with the principle that a statute is not construed in isolation, but is read with reference to the entire statutory scheme of which it is a part. (See *Lincoln Place Tenants Assn. v. City of Los Angeles* (2007) 155 Cal.App.4th 425, 440 [66 Cal.Rptr.3d 120] [statutory language is construed in context of statute as a whole].) This principle ensures that the part operates in harmony with the whole. (*Ibid.*) Business and Professions Code section 6201 provides that an attorney must provide the client with a notice of the availability of arbitration under the MFAA before or when the attorney commences an action against the client for the recovery of fees, costs, or both. Thus, it is reasonable to conclude that subsequent references in the MFAA to an "action pending" are to the type of action described in Business and Professions Code section 6201.

In this appeal, the personal injury action was not an action between Loeb and his attorneys. Furthermore, the notice of lien did not make Edwards a party to that lawsuit—by intervention or otherwise. (See *Cal-Western*

*Reconveyance Corp. v. Reed* (2007) 152 Cal.App.4th 1308, 1322, fn. 6 [62 Cal.Rptr.3d 244] [limited circumstances in which an attorney may intervene as a party in a client's lawsuit].) Therefore, we conclude that the personal injury action was not an "action pending" for purposes of Business and Professions Code section 6204, subdivision (b).

### b. *Meaning of "action" and "pending"*

A second and alternative reason why the personal injury action cannot be regarded as an "action pending" for purposes of the MFAA is based on the meaning of those two words.

The interpretation of the phrase "action pending" is aided by the definitions set forth in the Code of Civil Procedure. (See *Pesce v. Dept. Alcoholic Bev. Control* (1958) 51 Cal.2d 310, 312 [333 P.2d 15] [well-recognized rule that Bus. & Prof. Code and Code Civ. Proc. are to be construed together].)

■ First, the term "action" is defined in section 22 to mean "an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." Clearly, the personal injury action qualifies as an "action" under section 22.

Second, section 1049 provides: "An action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied." This statutory definition is the same, for practical purposes, as the definition of "pending" adopted in case law: "This contention turns on the meaning of the word 'pending.' But 'pending,' as used with respect to court procedure, means 'remaining undecided.' [Citation.] [¶] Black's Law Dictionary (4th ed. 1957) thus defines 'pending': 'Begun, but not yet completed; during; before the conclusion of; prior to the completion of; unsettled; undetermined; in process of settlement or adjustment.' " (*Myers v. J. H. Degnan, Inc.* (1962) 205 Cal.App.2d 62, 64 [22 Cal.Rptr. 777].)

Because a judgment had been filed in the personal injury action pursuant to the offer to compromise, the issues presented are whether that judgment had become final because (1) the time for appeal had passed or (2) the judgment had been satisfied. (§ 1049.) We consider the latter issue only to note that Loeb filed his motion challenging the arbitration award and attorney's lien on August 31, 2006, and the motion for entry of satisfaction of judgment was not granted until September 2006. The judgment, however, had not been "sooner satisfied" (§ 1049) than the deadline for filing notice of appeal, and

that deadline is thus the date we must use to determine whether the personal injury action was pending at the time Loeb filed his motion.

■ Whether the time for appeal of the judgment had passed by the date Loeb filed his motion must be determined by applying the rules that set forth the deadline for taking an appeal. The usual deadline for filing a notice of appeal is "60 days after the party filing the notice of appeal . . . is served by a party with" the notice of entry of judgment. (Cal. Rules of Court, rule 8.104(a)(2).) In this case, the notice of entry of judgment was filed in the personal injury action in early April 2006. Therefore, the 60-day time period for appeal expired in June, at least two months before Loeb filed his motion challenging the arbitration award. Under the definition of "pending" set forth in section 1049, the personal injury action was no longer pending when Loeb filed his motion on August 31, 2006.

### c. Conclusion

Based on the foregoing, we conclude that, for purposes of Business and Professions Code section 6204, subdivision (c), "no action [wa]s pending" between Loeb and his attorneys during the 30 days after the arbitration award was served. As a result, Loeb was required to comply with that subdivision to prevent the arbitration award from becoming binding.

### 2. Commencement of an action

■ Business and Professions Code section 6204, subdivision (c) requires a party to initiate a trial after arbitration "by the commencement of an action in the court having jurisdiction over the amount of money in controversy within 30 days after mailing of notice of the award."

Loeb's August 31, 2006, motion did not satisfy this requirement. The motion did not commence an action because, among other things, it did not result in Edwards becoming a party to the personal injury action or otherwise give the court jurisdiction over Edwards.

■ In summary, the superior court correctly interpreted and applied the provisions of the MFAA when it determined that Loeb had failed to take the steps necessary to prevent the arbitration award from becoming binding. As a result, the superior court properly denied Loeb's motion.

### IV. Relief from a Mistake or Excusable Neglect

In addition to challenging the superior court's interpretation of the MFAA, Loeb's appellate brief presents an alternate argument based on section 473, subdivision (b).

He contends that in representing himself he failed, through his mistake, inadvertence, surprise or excusable neglect, to file a separate action against his attorneys because he thought he had complied with the 30-day requirement in Business and Professions Code section 6203, subdivision (b) when he filed his motion opposing Edwards's lien.

Edwards argues that the request for relief under section 473 is untimely because it was not made within six months after the superior court's December 14, 2006, ruling.

 Section 473, subdivision (b) provides that an application for relief from an order taken against a party through mistake, inadvertence or excusable neglect "shall be made within a reasonable time, in no case exceeding six months, after the . . . order . . . was taken." Loeb did not meet this time limit. He first raised this issue in his opening appellate brief, which was filed more than six months after the December 14, 2006, ruling. Therefore, he is not entitled to relief under section 473, subdivision (b). Accordingly, we do not reach (1) the question whether he is permitted to raise this argument for the first time on appeal or (2) the merits of his claim of mistake.

V. *Edwards's Motion to Disburse Fees and Costs from Settlement Funds*

A. *Edwards's Contention*

Edwards's appellate brief contended that the order disbursing part of the settlement funds deposited with the court was correct because "the Arbitration Award became binding as a matter of law pursuant to the provisions of Business & Professions Code Sections 6203(b) and 6204." (Underscoring omitted.)

Edwards's appellate brief, like the points and authorities filed in the superior court, cited no case law, statute, regulation, or secondary authority for the proposition that a binding arbitration award may be enforced before a petition for confirmation is filed and a judgment of confirmation entered.

Because confirmation of the arbitration award was not addressed in the appellate briefing or in the superior court, this court sent the parties a letter before oral argument asking, among other things, "whether the arbitration award in this case was 'confirmed' by 'petition' " for purposes of Business and Professions Code section 6203, subdivision (b).[7] During oral argument,

---

[7] We also asked the parties: "Are you aware of any published decision in which an *unconfirmed* arbitration award (whether that award was made under the MFAA or otherwise) was enforced by a court?" During oral argument, neither party cited such a published decision. Nor did Edwards argue that an unconfirmed arbitration award was enforceable.

Edwards asserted that his motion for partial disbursement of judgment or settlement proceeds was, in substance, a petition to confirm the arbitration award.

### B. *Applicable Law*

The issue raised concerns how to enforce an arbitration award made pursuant to the MFAA.[8]

This subject is addressed in the second and third sentences of subdivision (b) of section 6203 of the Business and Professions Code. The second sentence applies when a lawsuit between the attorney and client already has been filed. That sentence does not apply in this appeal.

The third sentence of subdivision (b) of section 6203 of the Business and Professions Code provides: "If no action [between the parties to the arbitration] is pending in any court, the award may be confirmed, corrected, or vacated by petition to the court having jurisdiction over the amount of the arbitration award, but otherwise in the same manner as provided in Chapter 4 (commencing with Section 1285) of Title 9 of Part 3 of the Code of Civil Procedure."[9]

As discussed earlier (see pt. III.C.1., *ante*), there was no action pending between Loeb and Edwards. Therefore, the third sentence applies to this case. As a result, any petition to confirm the arbitration award in favor of Edwards is subject to part 3, title 9, chapter 4 of the Code of Civil Procedure. Under that chapter, an arbitration award is not directly enforceable because it "has the same force and effect as a contract in writing between the parties to the arbitration" until it has been confirmed or vacated. (§ 1287.6; see Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2007) ¶ 5:443, p. 5-300.) Based on this rule, we examine how arbitration awards are confirmed and thus rendered enforceable.

Section 1285 provides that "[a]ny party to an arbitration in which an award has been made may petition the court to confirm, correct or vacate the

---

[8] We note that the "Notice of Your Rights After Fee Arbitration" that was enclosed with the arbitration award dealt with this issue by addressing (1) filing a petition to confirm the arbitration award, (2) obtaining a judgment of confirmation, and (3) executing such a judgment.

[9] Part 3, title 9, chapter 4 of the Code of Civil Procedure governs the enforcement of arbitration awards. Part 3, title 9 of the Code of Civil Procedure concerns arbitration. Part 3 of the Code of Civil Procedure concerns special proceedings of a civil nature. (§ 1.)

Chapter 4 is divided into two articles. Article 1, which contains sections 1285 through 1287.6, concerns the confirmation, correction or vacation of the award. Article 2 addresses limitations of time and contains sections 1288 through 1288.8.

award."[10] Section 1286 delineates the powers of a court with respect to an arbitration award as follows: "If a petition or response under this chapter is duly served and filed, the court shall confirm the award as made, whether rendered in this state or another state, unless in accordance with this chapter it corrects the award and confirms it as corrected, vacates the award or dismisses the proceedings."

Pursuant to these statutory provisions, "[t]he procedure by which the prevailing party [in an arbitration] obtains an enforceable judgment is a petition to confirm the award." (Knight et al., Cal. Practice Guide: Alternative Dispute Resolution, *supra*, ¶ 5:527, p. 5-352.)

The contents that must be included in a petition are specified by section 1285.4. The petition must set forth the substance of the agreement to arbitrate, the names of the arbitrators, the arbitration award, and any written opinion of the arbitrators. (*Ibid.*) The contents of a response to a petition are specified by section 1285.6. A response that requests the award be corrected or vacated must set forth the grounds on which the requested relief is based. (§ 1285.8.)

If an arbitration award is confirmed by a court, then "judgment shall be entered in conformity [with the award]." (§ 1287.4.) A judgment so entered has the same force and effect as any other civil judgment. (*Ibid.*) Thus, it may be enforced like any other civil judgment. (*Ibid.*)

### C. *Application of Law to the Facts of This Case*

Edwards asserted that his motion for partial disbursement of judgment or settlement proceeds was, in substance, a petition to confirm the arbitration award. We disagree.

Edwards's motion cannot be construed as a petition to confirm the arbitration award because neither the notice of motion nor the supporting memorandum of points and authorities mentions confirmation of the award or requests the entry of a judgment of confirmation. Edwards's papers only request the disbursement of funds. Furthermore, the order entered by the superior court did not purport to (1) confirm the arbitration award or (2) direct the entry of a judgment in conformity with the confirmed arbitration award. (See § 1287.4 [entry of judgment on confirmation of award].)

Because Edwards did not file a petition to confirm the arbitration award and obtain confirmation of the award, the award has no greater force or effect

---

[10] Generally, when there is no action pending between the parties to the arbitration, the petition to confirm the arbitration award will be the document that commences a new lawsuit.

than the written retainer agreement, which specified the amount of Edwards's fee and assigned it a lien on any settlement or judgment obtained. (§ 1287.6.)

A further consequence of Edwards's failure to obtain confirmation of the arbitration award is that the superior court could not treat the arbitration award as though it were an enforceable judgment. (§ 1286.)

In effect, Edwards missed a step in enforcing the arbitration award. In doing so, Edwards did more than avoid empty formalities. Had a petition to confirm the arbitration award been filed, a procedure would have been initiated in which Loeb could have raised some, albeit not all, of the grounds that he now claims justify invalidating the arbitration award. (§§ 1285.6, 1285.8.)

In particular, Loeb's response to such a petition could have asserted that the "award was procured by corruption" (§ 1286.2, subd. (a)(1)), the arbitrator was corrupt (*id.*, subd. (a)(2)), or the arbitrator exceeded his powers (*id.*, subd. (a)(4)).

In summary, the superior court's tentative ruling denying Edwards's motion was correct. Edwards did not follow the correct procedure for enforcing the arbitration award and, as a result, the superior court did not have the authority to enforce the unconfirmed arbitration award. Consequently, the order directing the clerk of the court to deliver $35,028.82 to Edwards must be reversed.

### D. *Directions on Remand*

The portion of the superior court's order directing the clerk of the court to forward $64,971.18 to Loeb will be affirmed. There is no controversy between Edwards and Loeb regarding this amount. Accordingly, if Loeb has not received those funds, the clerk of the court should deliver them to Loeb.[11]

Our treatment of the $35,028.82 that the superior court directed be delivered to Edwards is not as simple. Under section 908, a reviewing court has discretionary authority to order restitution when an order is reversed. Specifically, section 908 provides: "When the . . . order is reversed or modified, the reviewing court may direct that the parties be returned so far as possible to the positions they occupied before the enforcement of or execution on the . . . order. In doing so, the reviewing court may order restitution on reasonable terms and conditions of all property and rights lost by the

---

[11] Delivery of those funds may occur before remittitur is issued because that portion of the superior court's order was not stayed by the appeal. (§ 917.2.)

erroneous . . . order, so far as such restitution is consistent with rights of third parties and may direct the entry of a money judgment sufficient to compensate for property or rights not restored. The reviewing court may take evidence and make findings concerning such matters or may, by order, refer such matters to the trial court for determination."

In accordance with section 908, we will provide the superior court with directions that will place the parties in nearly the same positions they occupied before the erroneous order was enforced. We regard these directions as equitable under the circumstances presented. (See generally *Textron Financial Corp. v. National Union Fire Ins. Co.* (2004) 118 Cal.App.4th 1061, 1085–1086 [13 Cal.Rptr.3d 586] [consideration of what was equitable under the circumstances guided appellate court's exercise of discretion under § 908].)

Two possibilities regarding the $35,028.82 exist and must be addressed here.

First, if those funds are still in the custody of the superior court, then 30 days after remittitur has issued in this matter, those funds shall be delivered to Loeb unless Edwards has taken measures that prevent such delivery.

Second, if those funds were delivered to Edwards, then Edwards shall be ordered to return $35,028.82 to the custody of the superior court within one week after remittitur has issued in this matter.[12] Furthermore, 30 days after remittitur has issued in this matter, those funds shall be delivered to Loeb unless Edwards has followed the procedures set forth in section 1285 and the superior court has issued an order releasing those funds to one or both of the parties.

## DISPOSITION

The superior court's ruling filed on December 14, 2006, is affirmed in part and reversed in part.

The order denying Loeb's motion in opposition to lien is affirmed.

---

[12] It appears that the funds may have been delivered to Edwards because (1) there is no indication in the appellate record that Loeb obtained a stay of the order pending appeal and (2) the order was not automatically stayed under the general rule regarding the stay of enforcement of an order pending appeal because of the exception set forth in section 917.2. Section 917.2 provides, among other things, that the perfection of an appeal does not stay the enforcement of an order directing the delivery of personal property unless an undertaking is given by the appellant.

The order granting the motion to disburse fees and costs from settlement funds is (1) reversed insofar as it directed the clerk of the court to deliver $35,028.82 to Baradat & Edwards and (2) affirmed insofar as it directed the clerk of the court to deliver funds to Edwin Loeb. The matter is remanded to the superior court with directions to (1) enter a new order denying without prejudice that motion to disburse fees and costs from settlement funds and (2) enter such other orders as are consistent with this opinion.

Each party shall bear its own costs on appeal.

Gomes, Acting P. J., and Hill, J., concurred.