[L. A. No. 6233. In Bank.—November 12, 1921.]

IMPERIAL VALLEY LAND COMPANY (a Corporation), Appellant, v. GLOBE GRAIN & MILLING COMPANY (a Corporation), et al., Respondents.

[1] LANDLORD AND TENANT — LEASE — RENT PAYABLE IN COTTON — RIGHTS OF LANDLORD.—An agreement to raise cotton on leased land and deliver to the landlord one-fourth of the crop as rental creates no title in the landlord to such portion, but merely measures in cotton the amount of the rental for which the tenants are liable.

[2] CONVERSION—PLEADING—INSUFFICIENT ALLEGATION OF OWNERSHIP. In an action by a landlord against a bank for the alleged conversion of certain cotton claimed by the plaintiff as rental for the premises upon which the cotton was grown, the recital in the complaint that the defendant held warehouse receipts for the cotton issued to one of the tenants and delivered to the bank as security for an indebtedness, and that the bank unlawfully sold and appropriated the proceeds of such cotton, was not a sufficient allegation of ownership, nor can it be so construed on appeal to reverse the judgment in favor of the defendant where the recital was directly contrary to the direct and specific allegations of the complaint.

[3] APPEAL—QUESTION NOT RAISED IN LOWER COURT.—A question not raised in the lower court cannot be determined on appeal.

[4] ID.—FINDINGS OUTSIDE OF ISSUES.—Findings outside of the issues raised by the pleadings and those actually submitted to and tried by the court should be disregarded.

[5] ID.—JUDGMENTS—PRESUMPTION.—On appeal, presumptions are indulged in favor of judgments.

APPEAL from a judgment of the Superior Court of Imperial County. Franklin J. Cole, Judge. Affirmed.

The facts are stated in the opinion of the court.

Sloss, Ackerman & Bradley, Lloyd S. Ackerman and Jas. W. Glassford for Appellant.

J. Stewart Ross, R. B. Whitelaw and Hickcox, Crenshaw & Trude for Respondents.

WILBUR, J.—This is an action to recover $8,470.37 damages for the conversion of ninety-four bales of cotton. The plaintiff secured judgment against the defendants R. G. Erskine and C. Curtis for this amount sued for, less a payment of $1,499.80 made after the complaint was filed, but the judgment was in favor of the other defendants, Globe Grain and Milling Company, California Food Products Company, First National Bank of Calexico, and First National Bank of Los Angeles. Plaintiff appeals from that portion of the judgment in favor of the defendants upon the judgment-roll containing a bill of exceptions in which the only specification of error is that the findings do not support the conclusions of law or the judgment. In appellant's briefs, however, the only portion of the judgment complained of is that in favor of the First National Bank of Los Angeles. Before stating the points relied upon by the parties some additional facts should be stated.

Plaintiff leased one thousand acres of land in Lower California, Mexico, to defendants R. G. Erskine and C. Curtis. The lessees were to raise cotton upon the land, and upon harvesting and ginning the same, agreed to render and deliver to the plaintiff one-fourth of the crop as rental. The cotton crop so raised amounted to 378 bales, ninety-four bales of which plaintiff claims that defendants wrongfully converted to their own use. It is evident that plaintiff's rights must turn upon the question of whether or

187 Cal.—23

not it had title to or a lien upon this ninety-four bales of cotton. [1] The respondent claims that the ninety-four bales of cotton merely measured in cotton the amount of the rental to be paid by the tenants to the landlord, for which indebtedness they are liable, but this agreement created no title in the landlord to the cotton grown upon the land. This position is correct and is conceded to be so by the appellant. (*Clarke* v. *Cobb,* 121 Cal. 595, [54 Pac. 74]; *Holt Mfg. Co.* v. *Thornton,* 136 Cal. 232, [68 Pac. 708].)

[2] The complaint does not state a cause of action against the First National Bank of Los Angeles, for the reason that it fails to allege that plaintiff owned the ninety-four bales of cotton alleged to have been converted by the bank. This point is made for the first time in respondents' final brief, filed after argument. A summary of the allegations of the complaint upon that subject follows.

It is alleged that the cotton crop grown upon the leased land was delivered to the compress-yard in Calexico, California, by C. Curtis, one of the tenants; that warehouse receipts were taken by him and pledged to the First National Bank of Los Angeles. It is alleged: "That all of said warehouse receipts including the warehouse receipts for the one-fourth (¼) of said cotton owned by the plaintiff herein, the title to which one-fourth (¼) interest was transferred to the plaintiff herein by the said Erskine and Curtis as payment for rent of the said premises hereinbefore described, and that all of said warehouse receipts are now being held by the said defendant, First National Bank of Los Angeles, or by its agent, the First National Bank of Calexico, and held by them in escrow to satisfy a purported bill of sale and a chattel mortgage, said bill of sale and mortgage heretofore made and delivered by said Erskine and Curtis to the defendant California Food Products Company." This parenthetical recital cannot take the place of a direct allegation of ownership, nor can it be so construed on appeal to reverse the judgment where the recital is directly contrary to the direct and specific allegations of the complaint. In that regard it is expressly alleged that, under the lease, Erskine and Curtis, the tenants, were to yield and pay as rental one-fourth of the cotton grown on the premises and that the defendants have, notwithstanding

demand therefor, *failed, neglected, and refused to deliver said one-fourth of said cotton or any part thereof* to the plaintiff, and that 378 bales of cotton were grown upon said premises, "of which under the terms of the aforesaid lease the plaintiff is entitled to and *should receive* free of all charges to the plaintiff at the compress-yard in the City of Calexico ninety-four (94) bales; that the defendants herein unlawfully and in violation of the rights of the plaintiff converted to their own use the said ninety-four (94) bales of cotton and sold the same, realizing therefrom the sum of eight thousand four hundred and seventy and 37/100 dollars ($8,470.37)," and further alleged that, though often requested, "the defendants, and each of them, have failed, neglected, and *refused to pay to the plaintiff,* the value of the share of the plaintiff of the cotton grown on said premises amounting to the sum of eight thousand four hundred seventy and 37/100 dollars ($8,470.37)" (italics ours). The complaint is framed upon the theory that the tenants failed to deliver the cotton to the plaintiff as they had agreed to do and that the subsequent sale and appropriation of the proceeds was a conversion of the property. Under these allegations no cause of action is stated against the First National Bank of Los Angeles, because it is affirmatively alleged that it was holding warehouse receipts issued to one of the tenants entitled to its possession and delivered to the First National Bank as security for an indebtedness owing to the bank, and this the bank had a right to do. The only cause of action stated is against Erskine and Curtis for unpaid rent.

We will not dispose of the appeal wholly upon the ground that the complaint does not state a cause of action against the First National Bank of Los Angeles, because this point was not raised by respondent until its final brief, and no reply was filed thereto. However, the sufficiency of the complaint is involved in the points presented which we will now consider. For that purpose we will state additional facts.

The defendants answered the complaint, after a general demurrer interposed by the Globe Grain & Milling Company was overruled. The answer contained a denial of the allegations of the plaintiff relating to the lease and cotton crop. Among other things, it was denied that the cotton

evidenced by the warehouse receipts was grown upon plaintiff's land or that plaintiff had any interest in or to the ninety-four bales of cotton. Affirmative allegations were made in the answer, to which we will presently refer, which, being quoted in the findings, have given rise to a misunderstanding as to the meaning and intent of the findings leading to a reversal of the judgment in favor of the bank by the district court of appeal, which court directed a judgment against the First National Bank of Los Angeles for the full amount claimed. Respondent claimed that this reversal was due to a misunderstanding of the record and, upon its petition, the case was transferred to this court for decision. It has since been argued and briefs filed by the parties, in addition to the petition for transfer and the answer thereto.

The district court of appeal reversed the judgment in favor of the First National Bank and ordered judgment against it upon the ground that the findings showed that the bank's claim had been fully paid and there remained in its hand sufficient of the proceeds of the cotton crop grown upon the land to pay the indebtedness due to the plaintiff. We will, therefore, first address ourselves to a consideration of that question.

The defendants' answer, after a denial of the allegations of the complaint, affirmatively alleges the facts concerning the pledging of the cotton by Erskine and Curtis to the First National Bank of Los Angeles. It alleges the loaning of money by the California Food Products Company to defendant Curtis upon the security of certain cotton, and that this company also advanced money to R. G. Erskine & Company upon a chattel mortgage and bill of sale of cotton grown on other lands farmed by them, with a guaranty of such indebtedness by C. Curtis. That these obligations and securities were all transferred to the bank, and were all paid, and thereafter the First National Bank of Los Angeles advanced twenty-one thousand dollars to Erskine and Curtis, for which Curtis executed and delivered the collateral notes of Erskine and Curtis, and did pledge to and deposit with the First National Bank of Los Angeles cotton represented by negotiable compress receipts as collateral security for the payment of the new liability created by said note, and that at the same time and under the

same conditions and with the same understanding the defendant bank advanced nine thousand dollars to R. G. Erskine & Company, and further alleges that "all of which said sums have since been paid by said C. Curtis."

The findings of the court follow word for word the affirmative allegations of the answer with reference to the twenty-one thousand dollar and the nine thousand dollar loans, and recites, in the language of the answer, "all of which said sums have since been paid by said C. Curtis." From this answer it appeared that the defendants were contending not only that the cotton had been hypothecated to the bank by C. Curtis for an indebtedness, but also admitting that said indebtedness had been fully paid. The answer does not state what became of the cotton, but it does deny any conversion of any interest of the plaintiff therein and denies that plaintiff had any interest therein. The findings, in addition to covering and conforming to the affirmative allegations of the answer, contain the following statement concerning the disposition of the cotton not made an issue by either the complaint or the answer.

"6. The crop of cotton raised by the defendants Erskine and Curtis on the land of plaintiff under the aforesaid lease between said defendants and plaintiff was sold as aforesaid and the proceeds thereof paid on the indebtedness of Erskine and Curtis to the First National Bank of Los Angeles, leaving an excess, the amount of which was the sum of ten thousand four hundred thirty-four and 58/100 Dollars ($10,434.58); that the rent due plaintiff under its lease with the defendants Erskine and Curtis was the sum of eight thousand four hundred seventy and 37/100 dollars ($8,470.37), of which amount one thousand four hundred ninety-nine ($1,499.00) dollars was paid by the defendants Erskine and Curtis, after all indebtedness to said First National Bank of Los Angeles was satisfied, leaving unpaid and due from the defendants Erskine and Curtis to plaintiff the sum of six thousand nine hundred seventy-one and 37/100 dollars ($6,971.37)."

From this condition of the record and findings the court of appeal deduced the following conclusion: "Neither the findings nor the evidence give any justification for the retention of plaintiff's money by the First National Bank of Los Angeles, and, in view of the findings of the trial

court that the indebtedness of Erskine and Curtis and of R. G. Erskine & Company was all paid to the bank and that the bank received from the proceeds of the sale of this property an excess over such indebtedness amounting to over ten thousand dollars, it is fair to assume that the bank still held that sum at the time of the trial, or that, in the absence of any reason for its failure to pay to plaintiff the amount due, any disposition which the bank made of the excess was illegal.''

Thus the district court of appeal reached the conclusion that the bank had in its hands ten thousand dollars belonging to Erskine and Curtis after the payment of all indebtedness due to it by them. We mention this because it now seems to be conceded by both parties that the real situation with reference to the ten thousand dollars is this: That while it is true there was a surplus of ten thousand dollars received from the cotton crop raised upon plaintiff's land, over and above the indebtedness of Erskine and Curtis to the First National Bank, that this balance, with the exception of $1,499 paid to the plaintiff, was applied by the bank to the indebtedness owing by R. G. Erskine & Company and guaranteed by C. Curtis, and that it was the application of this amount that paid the nine thousand dollar indebtedness of R. G. Erskine & Company, guaranteed by Curtis. In other words, the bank, instead of having ten thousand dollars over and above all indebtedness due it, had only $1,499, which has already been applied to the plaintiff's claim. Viewed in the light of this admission, a critical analysis of finding 6, above quoted, reveals that the finding is not inconsistent with the facts as now admitted. That finding was evidently for the purpose of fixing the liability of the defendants Erskine and Curtis and not of the bank.

Before considering the other contentions of the parties, it is proper to say that the district court of appeal was no doubt misled as to the facts by the statements and admissions in the briefs of the parties, and, in view of the situation now developed, it is proper to call attention to some of the statements in those briefs. In appellant's opening brief, after reciting the advancement of the twenty-one thousand dollars and the nine thousand dollars, it is said: ''These loans were made on the additional security of a

personal guaranty by C. Curtis, one of the tenants to whom appellant leased, *and subsequently C. Curtis paid all of said notes and advances.* Appellant's position at the trial was and now is that *after Erskine & Curtis' debts had been paid there was a surplus of $10,434.58* out of which appellant was entitled to its rental or crop share, the value of which was $8,470.37; that of this amount $1,499 was paid and the respondent First National Bank of Los Angeles became and was indebted to appellant in the sum of $6,971.37" (italics ours). It was further stated by appellant that there was no dispute on the facts, most of the evidence having been by way of stipulation and there having been no rebuttal by the defendants at the trial. Upon this statement the court was hardly to be expected to note that nine thousand dollars of the $10,434.58 was applied to Curtis' pledge and that it was in this manner only that he paid "all of said notes and advances." The impression gained from this statement is that C. Curtis, from his own resources, had paid the amount of the loan made to him and to his principal, and that there still remained the amount of $10,434.58 in the bank's possession. Respondent did not clear up this uncertainty in his reply brief, but, on the contrary, stated: "Respondents have only one issue with appellant in the statement of facts: There is no evidence nor finding of any partnership of Curtis and Erskine, nor of R. G. Erskine and Co." Thus, the respondent apparently conceded that the defendant had in its possession ten thousand dollars belonging to Erskine and Curtis, which the plaintiff was justly entitled to apply to the indebtedness due it from Curtis and Erskine.

The contentions of the parties in this court are therefore directed mainly to the question as to whether or not it was proper for the bank to apply the balance of the money received from the cotton grown on plaintiff's land to the indebtedness of R. G. Erskine & Company guaranteed by C. Curtis, when authorized so to do by C. Curtis. In short, the question raised here is as to the authority of Curtis to pledge the interest of Erskine, as copartner or cotenant, in the cotton grown upon plaintiff's land. [3] This question, which the appellant now seeks to have us determine, was not raised in the lower court and cannot be determined upon this appeal. The allegation of the plaintiff with

reference to the lease was merely by way of deraigning title to the cotton it claimed had been converted and showing that its claim for rent was unpaid. As already stated, it did not state a cause of action either for conversion or for rent against the defendant bank. A denial of these allegations by the defendant bank raised no material issue. The affirmative allegations of the answer were entirely unnecessary and offered no material issue. The apparent purpose of the respondent bank in the answer was to show good faith in that it had derived nothing from the sale of the cotton over the amount of its indebtedness. Later, a small excess of $1,499 was turned over to plaintiff. It is evident from the record in the trial court that the respondent bank never had its attention directed to the contention now made by the appellant. Its admission in its answer and by a stipulation and the finding based thereon prepared by the defendant clearly indicates that its attention was never directed in that court to the contention made here by appellant.

Not only was there no issue upon the question as to the application of the balance due Erskine 'and Curtis to the guaranty of Curtis on the R. G. Erskine & Company indebtedness, but the plaintiff objected to testimony along that line. The objection is as follows: "Here plaintiff objected to any testimony regarding any negotiations between Clifton Curtis and the First National Bank of Los Angeles and R. G. Erskine & Co., upon the ground that plaintiff is not concerned with any negotiations had between those parties and upon the ground that said negotiations are incompetent, irrelevant, and immaterial and not within the issues made by the complaint, and upon the further ground that the only subject in controversy is whether or not the Imperial Valley Land Company is entitled *to one-fourth of defendant's share of the cotton crop grown upon their land,* which objection was overruled by the court and to which ruling plaintiff now excepts" (italics ours). Although the objection was overruled, no evidence was offered with reference thereto other than the stipulation of facts literally conforming to the affirmative allegations of the answer subsequently quoted in the findings of fact by the court referred to above, and so far as the record shows, apart from the admissions of the parties in their briefs in this court, it is

a matter of doubt as to whether the balance of nine thousand dollars was paid upon the R. G. Erskine & Company's indebtedness. It cannot, therefore, be said that the right of Curtis to pledge the assets of his copartner or cotenant Erskine was either raised in the pleadings or by consent tried as an issue in the case. **[4]** That the findings, so far as they tend to support a judgment in favor of the plaintiff against the defendant, First National Bank of Los Angeles, are outside of the issues raised by the pleadings and those actually submitted to and tried by the court, and, therefore, should be disregarded.

**[5]** On appeal, presumptions are indulged in favor of judgments, and not against them, but, if we assume that the issue of title to the ninety-four bales of cotton was in fact submitted to and decided by the trial court, its decision was against plaintiff on that issue. The respondent bank has contended throughout the progress of the case in the trial court and on appeal that plaintiff had failed to show any title to the cotton and hence could not recover damages for its conversion. In view of our conclusions, it is unnecessary to consider the effect of the negotiability of the warehouse receipts.

Judgment affirmed.

Sloane, J., Lennon, J., Shurtleff, J., and Lawlor, J., concurred.

Rehearing denied.

All the Justices concurred.