Filed 2/26/14  Anaya v. Barak CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ALANA B. ANAYA, | B235951 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. PC044541) |
| v. | |
| IGAAL BARAK et al., | |
| Defendants and Respondents. | |
| WILSHIRE STATE BANK, | |
| Cross-complainant and Appellant, | |
| v. | |
| IGAAL BARAK, et al., | |
| Cross-defendants and Respondents. | |

APPEALS from judgments of the Superior Court of Los Angeles County, Randy Rhodes, Judge.  Affirmed.

Jonathan A. Malek for Plaintiff, Cross-defendant and Appellant Alana B. Anaya.

Kim, Park, Choi & Yi, John H. Choi; Law Offices of James Alexander Kim and James Alexander Kim for Cross-complainant and Appellant Wilshire State Bank.

Law Office of Roger Franklin and Roger Franklin for Defendants, Cross-defendants and Respondents Igaal Barak, Hilda Jimenez Barak and Barak Family Trust.

Plaintiff and appellant Alana B. Anaya (Anaya) appeals a judgment of dismissal following the sustaining of demurrers interposed by defendants and respondents Igaal Barak (Igaal), Hilda Jimenez Barak (Hilda) (collectively, the Baraks) and Barak Family Trust (Trust) to Anaya's fourth amended complaint.

In addition, cross-complainant and appellant Wilshire State Bank (Bank) appeals a judgment of dismissal following the sustaining of demurrers interposed by cross-defendants and respondents Anaya and the Baraks to the Bank's second amended cross-complaint without leave to amend.

We perceive no error in the trial court's rulings and affirm the judgments of dismissal.

## I. ANAYA'S APPEAL

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Background.*

Igaal and Hilda, who were husband and wife but are now divorced, operated a private school known as the New Heights Preparatory School, Inc., and an enrichment program known as HSIS Schools, Inc., located at 8740-8756 Canby Avenue in Northridge, California. Canby Holdings, Inc. (Canby) was formed by Igaal to purchase the real property located at 8740-8756 Canby.

Anaya is an attorney and Igaal is her former client. In May 2007, Anaya invested $250,000 in Canby, and Anaya and Igaal became equal shareholders in Canby. On July 23, 2007, Canby purchased the subject real property.

2. *The terms of the Agreement between Anaya and Igaal..*

On July 17, 2007, six days before Canby purchased the subject real property, a buy/sell agreement (Agreement) was signed by Anaya and Igaal.

Paragraph 10 of the Agreement provided that within one year of July 17, 2007, Igaal was to purchase Anaya's shares for $250,000 plus 15 percent return on equity. Paragraph 10 stated: "MANDATORY PURCHASE OF SHARES [¶] On or before July 17, 2008, Barak or his assignee must purchase the shares of Anaya and obtain a release of personal guarantees of any corporate financial instrument executed by Anaya.

2

The purchase price of the shares shall be the amount of capital of $250,000 plus 15% return on this equity for the period of time from inception of this agreement (July 17, 2007) to the date of the purchase of Anaya shares."

Paragraph 11 specified the contractual consequence in the event Igaal failed to purchase Anaya's shares. It stated: "FAILURE TO PURCHASE SHARES BY BARAK [¶] Should Barak fail to exercise the purchase of shares by July 17, 2008, Canby Holdings, Inc. will pay to Anaya the sum of $36,000 due on August 8, 2008 and beginning September 1, 2008, monthly rent in the sum of $3,000 per month."

At the end of the one-year period, Igaal did not purchase Anaya's shares.

On February 23, 2010, Canby filed for bankruptcy.

3. *Proceedings.*

a. *Anaya's pleadings.*

On January 27, 2009, Anaya filed suit. The operative fourth amended complaint, filed May 6, 2011, pled various causes of action against Igaal, Hilda and the Trust, including breach of contract, fraud, conversion and breach of fiduciary duty.

The gravamen of the complaint was that "Igaal . . . breached the contract by failing to pay the agreed upon purchase price for [Anaya's] interest and shares in Canby Holdings and by taking all the funds in the money market account at [the Bank] that were earmarked to payoff [Anaya's] loan and thereafter, completely failing to pay [Anaya]," entitling Anaya to $296,745.50 in damages.

Anaya further pled, inter alia, that Igaal and Hilda fraudulently induced her to enter into the Buy/Sell Agreement by representing to her they would repay the $250,000 loan by July 17, 2008, and that they wrongfully converted funds earmarked for Anaya, which funds were to be used to repay Anaya.

b. *Demurrer.*

Igaal, Hilda and the Trust demurred to the fourth amended complaint. They contended Anaya failed to state a cause of action for breach of contract because the Agreement provided the contractual consequence for Igaal's failure to purchase Anaya's shares: Paragraph 11 of the Agreement specified that if Igaal failed to purchase Anaya's

3

shares by July 17, 2008, Canby would pay Anaya $36,000 on August 8, 2008, and would pay $3,000 monthly rent, beginning September 1, 2008. Therefore, Anaya could not state a cause of action against Igaal and the Trust for breach of contract based on Igaal's failure to purchase Anaya's shares.

Defendants further argued no cause of action was stated for fraud because in every contract, one makes a promise to induce the other party to act, but the mere failure to perform a promise is not fraud. Further, no cause of action was stated for conversion because a contractual claim for funds is insufficient to state a cause of action for conversion; there was no allegation that the money market account at the Bank was Anaya's account, in Anaya's name, or that they were Anaya's funds.

c. *Trial court's ruling.*

On July 27, 2011, the trial court sustained the demurrer to the fourth amended complaint without leave to amend, stating: "[Anaya] has failed to allege sufficient facts to support the causes of action. While leave to amend is liberally granted, [Anaya] has had 5 opportunities to plead her claims against moving parties. The case was filed on 1-27-09 and [Anaya] has still failed to properly plead the subject claims against moving parties. [¶] The complaint is dismissed as to moving parties and defendants, Igaal . . . , Hilda . . . and Barak Family Trust."

Anaya filed a timely notice of appeal from the judgment of dismissal.

## CONTENTIONS

Anaya contends: the trial court erred in sustaining the demurrers to the causes of action for breach of contract, fraud, conversion, conspiracy to convert, conspiracy to commit fraud, restitution and breach of fiduciary duty; and the trial court erred in sustaining the Trust's demurrer because the Trust is Igaal's alter ego.

## DISCUSSION

1. *Standard of appellate review.*

In determining whether a plaintiff has properly stated a claim for relief, "our standard of review is clear: ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.

4

[Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' [Citations.]" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126, italics added (*Zelig*).) Our review is de novo. (*Ibid.*)

    2. *No cause of action stated for breach of contract.*

Anaya contends Barak breached the agreement by failing to tender the price for the purchase of the shares after exercising his option to purchase, and as a result she was injured in the sum of $296,745. Taking these facts as true, Anaya asserts she stated a cause of action for breach of contract.

As indicated, paragraph 10 of the Agreement called for Igaal to purchase Anaya's shares in Canby within one year of July 17, 2007, for $250,000 plus 15 percent return on equity.

In addition, paragraph 11 of the Agreement stated: "FAILURE TO PURCHASE SHARES BY [IGAAL] [¶] Should [Igaal] fail to exercise the purchase of shares by July 17, 2008, Canby Holdings, Inc. will pay to Anaya the sum of $36,000 due on August 8, 2008 and beginning September 1, 2008, monthly rent in the sum of $3,000 per month." Thus, paragraph 11 of the Agreement specified the contractual consequence in the event Igaal did not purchase Anaya's shares.

Based on the express language of the Agreement, Igaal was not in breach of the Agreement when he did not purchase Anaya's shares. The consequence of Igaal's failure to purchase Anaya's shares was that pursuant to the Agreement, Canby would become obligated to pay Anaya the sum of $36,000 and $3,000 monthly rent thereafter. Anaya cannot rewrite the contract to make Igaal liable for damages for his nonpurchase of her

5

shares in Canby. The trial court properly held Anaya failed to state a cause of action against Igaal for breach of contract.

3. *No cause of action stated for fraud.*

Anaya contends she pled in detail the fraudulent conduct of Igaal and Hilda, their intention to induce her to loan them money, her reliance thereon and damages. The argument lacks merit.

Anaya pled: "44. In order the induce [her] to enter into the Buy Sell Agreement, [Igaal and Hilda] specifically represented to [her] that they would repay her loan of $250,000 plus $15% interest on or before July 17, 2008 and she would be promptly removed as guarantor from both loans as they specifically represented they would refinance the loans before the end of 2008 or qualify to have [her] removed from the loans."

A broken promise is not a false promise. (*Tenzer v. Superscope, Inc.* (1985) 39 Cal.3d 18, 30 [something more than nonperformance is required to prove defendant's intent not to perform his promise].) Anaya failed to plead facts to show Igaal's intention not to perform at the time he entered into the Agreement to purchase Anaya's shares in Canby. As the trial court noted, it appears Anaya merely reframed her breach of contract claim as a tort. That is insufficient to state a cause of action for fraud.

4. *No cause of action stated for conversion.*

Anaya's cause of action for conversion pled that Igaal and Hilda withdrew funds from Canby's account at the Bank, which funds were earmarked for repayment to Anaya, thereby injuring Anaya in the sum of $296,745.70.

" 'Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages. It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use. [Citations.]' [Citation.] Money can be the subject of an action for conversion if a

6

specific sum capable of identification is involved. [Citation.] [¶] Neither legal title nor absolute ownership of the property is necessary. [Citation.] A party need only allege it is 'entitled to immediate possession at the time of conversion. [Citations.]' [Citations.] *However, a mere contractual right of payment, without more, will not suffice*. For example, in *Imperial Valley L. Co. v. Globe G. & M. Co*. (1921) 187 Cal. 352 [202 P. 129], the tenant entered into an agreement to raise crops on leased land and to pay the landlord one-fourth of the crop as rental. However, the tenant sold the entire crop and the proceeds were used to pay other debts of the tenant. The landlord brought an action for conversion. The Supreme Court concluded no claim was stated because the rental agreement established no title to or lien upon the crop but only established the measure of damages for breach of contract. (*Id*. at pp. 353-354.)" (*Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 451-452, italics ours, original italics deleted.)

Here, Anaya alleged the Agreement required Igaal to purchase her Canby shares within one year for a sum certain, and that Igaal and Hilda engaged in conversion by failing to purchase her shares with monies from a fund that was allegedly earmarked for that purpose. However, a contractual right to payment is insufficient to state a claim for conversion. Here, the fact that a fund existed from which payment could have been made does not give rise to a claim for conversion because the Agreement did not create a lien on that fund. To the contrary, the Agreement specified the contractual consequence for nonpurchase of Anaya's shares – pursuant to paragraph 11 thereof, Canby would become obligated to pay Anaya the sum of $36,000 and $3,000 in monthly rent thereafter.

Given the contractual consequence for nonpurchase of Anaya's shares, Anaya cannot state a cause of action for conversion based on defendants' failure to use certain funds for that purpose.

5. *No cause of action stated against Igaal for breach of fiduciary duty.*

Anaya's cause of action against Igaal for breach of fiduciary duty was not brought on behalf of Canby. Rather, she alleged that due to Igaal's breach of fiduciary duty, Canby failed to pay her the $36,000 and $3,000 monthly rent to which she was entitled,

7

pursuant to paragraph 11 of the Agreement. "Had [Igaal] collected the rent required of HSIS and New Heights or evicted HSIS and New Heights and rented the property to an entity which would actually pay rent, Canby would not have defaulted on its obligations to Plaintiff."

Anaya relies on *Crain v. Electronic Memories & Magnetics Corp.* (1975) 50 Cal.App.3d 509 (*Crain*) and *Jara v. Suprema Meats, Inc*. (2004) 121 Cal.App.4th 1238 (*Jara*), for the proposition that a shareholder can bring a direct action for damages for individual relief, and she pled an entitlement to such relief, in that she was owed $36,000 plus $3,000 per month from Canby.

*Crain* and *Jara* are inapposite because they recognize the right of a *minority* shareholder to relief against a *majority* shareholder.[1] Here, as pled in the complaint, Anaya and Igaal each held 50 percent of Canby's shares, and thus were equal shareholders. Thus, as the trial court ruled, Anaya, as an equal shareholder, failed to

---

[1] For example, *Jara* recognized the right of "a minority shareholder to bring a personal action alleging 'a majority stockholders' breach of a fiduciary duty to minority stockholders, which resulted in the majority stockholders retaining a disproportionate share of the corporation's ongoing value.' [Citation.]" (*Jara, supra*, 121 Cal.App.4th at pp. 1257-1258.) In *Jara*, the plaintiff, a minority shareholder, alleged the defendants, who were majority shareholders, breached their fiduciary duty to the minority shareholder by paying themselves excessive compensation and denying the minority shareholder a fair share of the corporate profits. (*Id.* at p. 1242, 1258.)
Similarly, in *Crain, supra*, 50 Cal.App.3d 509, "the majority shareholder of a computer company exercised its control over the company to sell the entire business to a third party for cash and to loan the cash back to itself in return for an unsecured promissory note payable to the computer company. The minority shareholders sued the majority shareholder alleging, that the effect of the transaction was to leave the computer company as a shell corporation with an unsecured note as its principal asset. The court held that the complaint alleged a breach of fiduciary duty that entitled the plaintiffs to individual relief, not solely derivative relief, against the majority shareholder. (*Id*. at p. 524.)" (*Jara, supra*, 121 Cal.App.4th at p. 1255.)

8

allege facts showing how she can maintain a personal cause of action against Igaal for breach of fiduciary duty arising out of his alleged mismanagement of Canby.[2]

6. *Other issues*.

a. *Conspiracy claims.*

Anaya contends the trial court erred in sustaining demurrers to her causes of action for "conspiracy to convert" and "conspiracy to commit fraud," arguing that she properly pled the underlying claims for conversion and fraud.

As discussed above, Anaya failed to state a cause of action for conversion or for fraud. Accordingly, the conspiracy claims likewise are infirm.

b. *Restitution.*

Anaya contends she stated a cause of action for restitution, based on the Baraks' withdrawing Canby's funds from the Bank, at the expense of Anaya, as those funds were earmarked for the purchase of her shares. The argument is unavailing.

As a preliminary matter, "[t]*here is no freestanding cause of action for 'restitution' in California.* [Citation.] Common law principles of restitution require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient; a typical cause of action involving such remedy is 'quasi-contract.' [Citations.] ['Whether termed unjust enrichment, quasi-contract, or quantum meruit, the equitable remedy of restitution when unjust enrichment has occurred "is an obligation (not a true contract [citation] ) created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to his or her former position by return of the thing or its equivalent in money" '].)" (*Munoz v. MacMillan* (2011) 195 Cal.App.4th 648, 661, italics added.)

Further, as the trial court found, Anaya received what she paid for, i.e., 50 percent of the shares in Canby, which purchased the subject real property, as promised.

---

[2] Insofar as Anaya was suing not for the decline in the value of her stock, or for injury to Canby, but rather, for Canby's failure to pay her $36,000 plus $3,000 in monthly rent, her cause of action would have been for damages as a creditor of Canby.

9

We agree with the trial court that "this equitable theory of recovery seems to be another attempt to re-frame the breach of [contract cause of action]."

Accordingly, Anaya failed to state a cause of action for restitution.

c. *Alter ego.*

Finally, Anaya contends the trial court erred in sustaining the Trust's demurrer because the Trust is Igaal's alter ego.

At this juncture, because Anaya has failed to state a cause of action against Igaal, the alter ego issue is an irrelevancy.

## CONCLUSION AS TO ANAYA'S APPEAL

For the reasons set forth above, the trial court properly sustained the demurrer to the fourth amended complaint without leave to amend.

## II. THE BANK'S APPEAL

1. *Pleadings: Bank's cross-complaint to enforce guaranty as against Igaal, Hilda and Anaya.*

The Bank filed a cross-complaint against Igaal, Hilda and Anaya, as guarantors of a commercial loan made to borrowers New Heights Preparatory School, Inc. (New Heights) and Canby. The operative second amended complaint, filed May 6, 2011, alleged in relevant part:

On July 20, 2007, the Bank made a commercial loan of $1,781,500 to Canby and New Heights. The collateral for the loan consisted of deeds of trust for the real property located at 8740, 8740 ½, 8746 and 8756 Canby Avenue. The Baraks and Anaya executed written commercial guaranty agreements, agreeing they would be responsible for borrowers' indebtedness, even if the Bank foreclosed on the borrowers' real property. The borrowers defaulted on the loans, leading to a notice of default and election to sell under deed of trust. On August 30, 2010, a public auction was conducted. There were no bidders at the sale, and the Bank purchased the Canby properties for a credit bid in the amount of $1,635,000. On the date of the sale, the total amount owed by the borrowers was $2,020,322.50. The difference between the total indebtedness and the auction sale

10

price was $385,322.64.  The Bank's cross-complaint sought to recover the amount of the deficiency from the guarantors.

2. *Unopposed demurrer to the cross-complaint.*

Cross-defendants Igaal and Hilda, with a joinder by Anaya, demurred to the Bank's second amended cross-complaint.  The Bank did not file any opposition thereto.

The basis of the cross-defendants' demurrer was that the Bank had failed to allege sufficient facts to show a deficiency.  The cross-defendants asserted the Bank was judicially estopped from claiming it had been damaged because in the bankruptcy court, it had represented that the fair market value of the property was $2.3 million.

Cross-defendants appended a copy of the Bank's motion for relief from the automatic stay, filed in the bankruptcy court on April 6, 2010, which stated "The fair market value of the entire Property is $2,300,000.00, established by: . . . Appraiser's declaration with appraisal attached herewith as Exhibit 9."  The papers further showed that on July 26, 2010, following a contested hearing, the bankruptcy court issued an order granting the Bank's motion for relief from the automatic stay, allowing the Bank to proceed with a foreclosure sale.  The foreclosure auction was conducted five weeks later, on August 30, 2010.

3. *Hearing and trial court's ruling.*

On July 27, 2011, the demurrer to the second amended cross-complaint came on for hearing.  James Kim, attorney for the Bank, was present at the hearing.

Prior to the hearing, the trial court issued a tentative ruling as follows:  "Based on the unopposed arguments set forth in the demurrer, [the Bank] has failed to allege facts to show a deficiency.  *Additionally, it appears that [the Bank] should be judicially estopped from claiming that the fair market value of the subject real properties was less than the $2.3 million claimed by [the Bank] in the Canby [bankruptcy] proceeding.  Based on such fair market value, there is no deficiency owed to [the Bank]* by [the movants/cross-defendants]."  (Italics added.)

11

At the commencement of the hearing, the trial court reiterated it tentatively sustained the demurrer "without leave as there's basically an unopposed demurrer."

Attorney Kim briefly argued: "Counsel is not requesting leave to amend or any kind of that relief. We believe the court's ruling is correct as a matter of law." Kim merely cited paragraphs 28 and 29 of the operative pleading, which state the guarantors expressly agreed that any indebtedness of the borrower would only be reduced by the sale price of the collateral (as opposed to the actual value of the collateral).

At the conclusion of the hearing, the trial court sustained the demurrer to the Bank's second amended cross-complaint without leave to amend.

4. *Motion for reconsideration*.

On August 8, 2011, the Bank filed a motion for reconsideration pursuant to Code of Civil Procedure section 1008 (section 1008), asking the trial court to reconsider its July 27, 2011 ruling sustaining the demurrer to the cross-complaint without leave to amend.

At the hearing on the motion for reconsideration, attorney Kim stated, "we have no problem with the court's ruling to the demurrer, and the not granting leave to amend. Our issue is the fact finding supporting the demurrer's ruling. We believe that that exceeded the scope of the demurrer. The court held that there was no deficiency, and that's our real issue, and we'd ask the court . . . to reconsider the basis for the court's ruling . . . ."

In seeking reconsideration, the Bank asserted it had failed to file written opposition to the demurrer because of a calendaring error. However, despite its non-opposition to the demurrer, relief was warranted because the trial court was "distracted" by the cross-defendants' improper speaking demurrer, which went beyond defects on the face of the pleading, to introduce a statement of opinion by the Bank's expert appraiser regarding the valuation of the subject real property. Based on said $2.3 million appraisal, the trial court made improper factual findings on demurrer, outside the scope of the pleadings, so as to warrant reconsideration.

12

The trial court denied reconsideration, noting that reconsideration under section 1008 "must be based on new and different facts."

On October 18, 2011, the Bank filed a timely notice of appeal from the judgment dismissing its second amended cross-complaint.

## CONTENTIONS

The Bank contends:  the trial court failed to apply long recognized law in ruling on the sufficiency of its cross-complaint; the Bank was under no obligation to allege the "fair value" of the property; it was not estopped from alleging damages; and the trial court erred in refusing to reconsider its ruling.

## DISCUSSION

1. *Based on the Bank's representation to the bankruptcy court that the subject real property was worth $2.3 million, the trial court properly applied the doctrine of judicial estoppel to conclude the Bank failed to state a cause of action against the guarantors for a deficiency.*

    a. *The doctrine of judicial estoppel.*

" ' "Judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. [Citations.]  The doctrine's dual goals are to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies.  [Citation.]  Application of the doctrine is discretionary." ' [Citation.]  The doctrine applies when '(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.' [Citations.]" (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986-987.)

13

*b. No merit to Bank's contention the trial court improperly took evidence on demurrer with respect to the valuation of the real property.*

It is established that in determining whether a plaintiff has properly stated a claim for relief, in addition to the face of the pleading, the trial court may also consider matters which are subject to judicial notice. (*Zelig, supra*, 27 Cal.4th at p. 1126.) Bankruptcy court records are subject to judicial notice pursuant to Evidence Code section 452, subdivision (d). Therefore, the trial court was entitled to consider the bankruptcy papers appended to the cross-defendants' demurrer to the Bank's second amended cross-complaint.

*c. Trial court properly held the Bank is judicially estopped from asserting the value of the subject real properties is less than the $2.3 million figure represented by the Bank to the bankruptcy court.*

As indicated, the papers appended to the cross-defendants' demurrer showed that the Bank, in seeking relief from the automatic stay, submitted an expert appraiser's declaration to the bankruptcy court. The real property declaration was executed by Anil Sah, Senior Vice President and Manager of Special Assets Department at the Bank. In said declaration, the Bank represented to the bankruptcy court that the fair market value of the subject real property (8740 & 8740 1/2 Canby Avenue and 8746 & 8756 Canby Avenue) was $2.3 million.

On July 26, 2010, based on the moving papers, including the Bank's $2.3 appraisal, the bankruptcy judge (Hon. Geraldine Mund) granted the contested motion for relief from the automatic stay, allowing the Bank to proceed with a foreclosure sale. The public auction was conducted five weeks later, on August 30, 2010. There were no bidders at the sale and the Bank purchased the Canby properties with a credit bid of $1,635,000, about $700,000 less than the appraised value. Although the property ostensibly was worth $2.3 million, the Bank then sued the guarantors to recover a deficiency judgment in the sum of $385,322, representing the difference between the total indebtedness of $2,020,322 (including accrued interest) and the sale price of $1,635,000.

On this record, the trial court properly applied the doctrine of judicial estoppel.

First, the Bank has taken two divergent positions with respect to the valuation of the property. (*Aguilar, supra*, 32 Cal.4th at p. 986.) In July 2010, it successfully represented to the bankruptcy court that the property was worth $2.3 million; the following month, it purchased the property for a credit bid of $1,635,000, or about $700,000 below the valuation of its expert appraiser. Notwithstanding its own appraisal which it supplied to the bankruptcy court in July 2010, the Bank argued in state court that valuation determined at the time of the sale, i.e., the $1,635,000 sale price in August 2010.

The Bank has taken these inconsistent positions in judicial proceedings (*Aguilar, supra*, 32 Cal.4th at p. 986), first in bankruptcy court and subsequently in state court.

The Bank was successful in asserting its initial position. (*Aguilar, supra*, 32 Cal.4th at p. 986.) The bankruptcy court, following a contested hearing, credited the Bank's position and lifted the automatic stay, enabling the foreclosure sale to proceed.

The two positions are totally inconsistent. (*Aguilar, supra*, 32 Cal.4th at p. 986.) Given the expert appraiser's valuation of $2.3 million, it reasonably would appear to the bankruptcy court that a foreclosure sale would be sufficient to satisfy the indebtedness to the Bank.

Finally, there is no showing the $2.3 million appraisal, which was before the bankruptcy court in July 2010, was the product of ignorance, fraud, or mistake. (*Aguilar, supra*, 32 Cal.4th at pp. 986-987.)

In view of the above, the trial court properly ruled the Bank was judicially estopped from asserting the value of the subject real properties was less than the $2.3 million figure represented by the Bank to the bankruptcy court. Accordingly, the Bank failed to allege facts to show a deficiency.

## DISPOSITION

The judgments dismissing the fourth amended complaint and the second amended cross-complaint against the demurring parties are affirmed. The parties shall bear their respective costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KLEIN, P. J.


We concur:


CROSKEY, J.


ALDRICH, J.


16